## Gordon Brothers, Inc., Appellant, *v.* Kelley et al.

*Contracts—Breach—Compromise—Accord and satisfaction—Novation.*

In an action of assumpsit to recover damages for the breach of a written contract to supply coal it appeared that the parties entered into an agreement for the settlement of the claim after the suit had been instituted. Under the terms of the compromise agreement plaintiff agreed to accept $200.00 and a certain quantity of coal in payment of the claim. It was also agreed that plaintiff would "discontinue and satisfy" the suit "on completion of the agreement." Defendant failed to deliver the coal as required by the compromise agreement. The defense was that the agreement constituted a novation and a bar to recovery upon the original contract. In such case it was error to enter a non-suit.

The parties dealt in accord and satisfaction requiring full performance to make it complete, and, in the meantime, the original contract and action thereon remained in full force.

Accord and satisfaction is distinguished from novation in that novation is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise in satisfaction of a previously existing claim, while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise, that is accepted as a satisfaction.

Argued October 25, 1927. Appeal No. 218, October T., 1927, by plaintiff from judgment of C. P., Centre County, September T., 1927, No. 151, in the case of Gordon Brothers, Inc., a corporation, v. M. D. Kelley and H. P. Kelley, trading and doing business as Kelley Brothers Coal Company. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Assumpsit for breach of a written contract. Before FURST, P. J.

After the suit was instituted the parties entered into the following contract which defendant alleged constituted a novation and a bar to a recovery on the original contract

And now, June 26th, A. D. 1918, it is hereby agreed by Kelley Brothers Coal Company, the above named defendant, that in settlement of the above stated claim, they will pay the sum of two hundred ($200.00) dollars in cash, the receipt whereof is hereby acknowledged and also the record costs, and will ship to the said Gordon Brothers, Inc., at the Pierce Street Siding, Kensington Street Station, Philadelphia, via. P. R. R., four hundred and twenty and sixty-two hundredths (420.62) net tons f. o. b. cars to be shipped from Vulcan No. 1 mine, said coal to be shipped at the rate of one car load per week until the said four hundred and twenty and sixty-two hundredths (420.62) tons are shipped and received by the said Gordon Brothers, Inc. It is distinctly agreed and understood that the said coal is to be the same as furnished to the Gordon Brothers, Inc., as under a former contract be-

tween these parties, dated May 1, 1916, the quality of the coal to be judged solely by said Gordon Brothers, Inc. Shipments to commence at once and continue each week until completed. R. R. weights to govern all shipments. Every effort will be made to deliver and fulfill this contract, but we are not responsible for delivery if delayed on account of strikes, lock outs, a combination of miners or laborers, accidents in the mines or interruption of transportation of any cause. In such case the obligation to deliver is cancelled to the extent equivalent to the extent of such interruption.

Kelley Brothers Coal Company,
By M. D. Kelley.

And now, July 16, A. D. 1918, it is hereby agreed that upon completion of the above stated agreement and payment of the record costs, that Gordon Brothers, Inc., the above named plaintiff, will discontinue and satisfy the above stated suit.

Gettig & Bower,
*Attorneys for Gordon*
*Brothers, Inc.*

The court granted defendants motion for a compulsory non-suit. Plaintiff appealed.

*Error assigned,* was the refusal to take off the non-suit.

*J. W. Sechler,* and with him *Henry P. Brown, John Arthur Brown* and *Gettig & Bower,* for appellant, cited: Jones v. Commonwealth Casualty Co., 255 Pa. 566; Wright v. Hanna, 210 Pa. 349; McCartney v. Kipp. 171 Pa. 644; Curtin v. People's Nat. Gas Co., 233 Pa. 397; Parish Mfg. Corp. v. Martin-Parry Corp., 285 Pa. 131; Second Bank of Mechanicsburg v. Graham, 246 Pa. 256; Hearn v. Kiehl, 38 Pa. 147;

Hosler v. Hursh, 151 Pa. 415; Foye v. Lilley Coal & Coke Co., 251 Pa. 409.

*Arthur Dale*, of *Orvis, Zerby & Dale*, for appellee.

OPINION BY LINN, J., March 2, 1928:

This suit was brought in 1917 for damages for breach of written contract dated May 5, 1916 to supply coal. The affidavit of defense alleged that plaintiff was in default. We notice that the docket entries show that a plea of non-assumpsit was entered; that plea was abolished by section 3 of the Practice Act.

May 20, 1927, a statutory demurrer under section 20 was filed, asserting that June 26, 1918 "an agreement of compromise [this contract will be found in the reporter's statement of the case] was entered into between the parties ...... and filed of record to the above stated number and term, a copy of which is hereto attached ......" and that the agreement "constitutes a novation and is a bar to recovery ......." While it was of course bad as a speaking demurrer, it does not appear to have been set down for hearing.

At the trial the court held that the contract of 1916 declared on had been discharged by novation,—by the substitution of the contract of 1918, supra;—a nonsuit was therefore entered; the refusal to take it off is the only error assigned. Was there such substitution?

Plaintiff offered evidence to show that when suit was brought defendants had defaulted in delivery—that 581 tons were undelivered—and that plaintiff's damage resulting from supplying that deficiency by purchase in the market at higher prices was $1,545. The only witness called by plaintiff was shown the contract dated June 26, 1918 during cross-examination, and was asked by defendant's counsel:

"Q. What contract was that?

A.  That was a conditional payment of the original contract.

Q.  Isn't it true, Mr. Hett, that the contract with the Kelley Brothers Coal Co. and Gordon Brothers, Incorporated, under date of June 26, 1918, was a contract under which you undertook to settle all your differences with reference to this case?

A.  Why, not by any means.  They simply agreed at that time to enter into this contract for the privilege of supplying us with coal instead of paying us in cash. It was an accommodation arrangement for their payment of their indebtedness to us in coal instead of cash, and in no wise affected their other dealings with us."

It will be observed that the second agreement begins with the title to this suit Gordon Brothers, Inc. v. Kelley Brothers Coal Company, with a reference to the court, term and number, and proceeds "...... that in settlement of thê above stated claim ......" cash will be paid and 420.62 tons of coal delivered, the "same as furnished to [plaintiff], as under a former contract between these parties, dated May 1, 1916, the quality of the coal to be judged solely by said [plaintiff]."  It is significant that it was "agreed that on completion of the above stated agreement, and payment of record costs, that Gordon Brothers, Inc., the above named plaintiff, will discontinue and satisfy the above stated suit."  The $200 cash payment was made and was credited to defendant on the claim for damages.  Two cars of coal were shipped and were rejected by plaintiff because it "had the appearance of being half earth and half coal;" it "...... looked like just so much earth with a little coal mixed along with it."  As the contract provided that "the quality of the coal to be judged solely by" plaintiff, the rejection was final in the absence of bad faith.  No further shipments were made.

What effect had the second contract on the first? Appellant contends both remained effective together, and to support that view, points to the provision that when the second is performed, plaintiff "will discontinue and satisfy the above stated suit." Appellees contend that "the new contract ........ constitutes a novation." If there was novation the first contract disappeared, became displaced and extinct (Wright v. Hanna, 210 Pa. 349, 353), there was substituted for the first, the second which thereafter became the only existing contract of the parties.

We then inquire what intention, if any, have the parties expressed on the subject? Have they indicated whether they substituted one for the other, or whether the second was supplementary or collateral to the first? The answer seems clear in the quotation made; the parties agreed that when the second contract has been performed plaintiff "will discontinue and satisfy the above suit." Why keep the suit alive? It was founded on the original contract; if that contract was discharged by the second contract, the foundation of the action went with it, the purpose of the suit was accomplished and it would have been discontinued forthwith, if the intention had been as appellees contend. The suit was brought and had existed since 1917, to force defendants to perform their obligation to deliver the coal or to pay instead; as long as it existed it was plaintiff's declaration that the cause of action existed. "Lord Coke defined 'action' to be 'a legal demand of one's right,' and cause of action comprises every fact a plaintiff is obliged to prove in order to obtain judgment; or, conversely, every fact the defendant would have the right to traverse ...... " Bradford v. Southern Rwy. Co., 195 U. S. 243, 248. And defendants must be taken so to have recognized it; for the second contract preserved in existence this cause of action, the breach of which was the foundation of the suit, by pro-

viding for its displacement and extinction only after performance of the second contract. It was only then and in that contingency that the suit should be discontinued and satisfied, i. e. that the obligation of the first contract should be discharged of record. Certainly, if the suit was not discontinued, plaintiff could try it; if plaintiff could try it, the contract, the breach of which was the cause of action, must not be discharged and the intention of the' parties must have been to keep it alive. Novation must clearly appear; it is not presumed; McCartney v. Kipp, 171 Pa. 644; here there is nothing to support the inference that it was intended.

As there was no conflict in facts, the parties having written their intention, the interpretation of the paper was for the court: Meaker Galvanizing Co. v. McInnes, 272 Pa. 561; the original contract was not discharged, it remained in force, modified of course by part performance accepted under the second.

Accord and satisfaction "is distinguished from novation in that novation is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise in satisfaction of a previously existing claim, while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction," 1 R. C. L. 178; see too Foye v. Lilley Coal & Coke Co., 251 Pa. 409, 416; Hosler v. Hursh, 151 Pa. 415, 422; Hearn v. Kiehl, 38 Pa. 147, 149.

Their writing shows that the parties dealt in accord and satisfaction and not in novation, and while they expressed an accord, that accord has not been executed: "......the legal notion of accord is a new agreement on a new consideration to discharge the debtor. And it is not enough that there be a clear agreement or accord, and a sufficient consideration, but the accord must be executed. The plea must allege that the matter was accepted in satisfaction. Mere

readiness to perform the accord, or a tender of performance, or even a part performance and readiness to perform the rest, will not do." Hearn v. Kiehl supra.

Judgment reversed and new trial awarded.