Gordon Brothers, Inc. *v.* Kelley et al., Appellant.

18

Argued October 28, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Arthur C. Dale,* for appellant, cited: Elliott v. Wanamaker, 155 Pa. 67; Meaker Galvanizing Company v. McInnes, 272 Pa. 561; Gilmore v. Hunt's Administrator, 66 Pa. 321; Chas. Baker v. George Hagey and Samuel Hagey, 177 Pa. 128.

*Jay W. Sechler,* for appellee, cited: Lillie v. American Car and Foundry Company, 209 Pa. 161; Ellis Jones v. West Penna. N. Gas Co., 146 Pa. 204; Jones v. The Western Assurance Co., 198 Pa. 206; Phillips v. Pilling, 215 Pa. 64.

OPINION BY TREXLER, J., January 29, 1930:

The defendants are engaged in the mining and distribution of coal. On May 5, 1916, the defendants agreed to sell to the plaintiff all the coal it needed for one year at the rate of $1.60 per ton, f. o. b. mines, shipment to be made as directed by the plaintiff and the coal to be all Vulcan vein. The defendants shipped coal until about October 1, 1916, after which, although often requested, they made no further shipments. The price of coal had gone up and plaintiff was compelled to buy elsewhere what was necessary to operate its plant. The price of bituminous coal in the open market was at that time higher than that of anthracite, so the plaintiff purchased anthracite to supply most of its need. A suit was brought September 21, 1917, to recover the difference between the price at which the coal was to be delivered and the price at which the plaintiff was compelled to pay in the open market.

About June 26, 1918, the parties entered into an agreement in which the plaintiff agreed to accept $200 in cash and 420.66 tons of coal to be shipped at the rate of one carload a week beginning at once, the plaintiff to be the sole judge of the quality of the coal. The defendants paid the $200, but failed to ship the coal. They did ship two carloads in November, 1918, five months after the agreement was made, but this coal was promptly rejected because it was a mixture of coal and earth and attempts to use it were unsuccessful. Nothing was done thereafter. When the plaintiff thereupon pressed the original suit, it was held by the trial judge that the agreement of June 26, 1918, was a novation and a non-suit was entered, but this court upon appeal set it aside and ordered a retrial, (Gordon Brothers, Inc. v. Kelley Brothers Coal Company, 92 Pa. Superior Ct. 485) holding in an opinion written by Brother LINN that "the original contract was not discharged, it remained in force modi-

fied, of course, by part performance accepted under the second," that the second transaction was an unexecuted accord and satisfaction and the extinction of the first contract could only come after the performance of the second arrangement. The case was then retried and ended in a verdict for the plaintiff and the present appeal is from the judgment entered thereon. All the assignments of error are directed to the charge of the court, except that which alleges error in refusing a new trial.

The points pressed in the arguments are that the court failed in not interpreting the contract, but left it to the jury. For instance, the second agreement provided, "The quality of the coal to be judged solely by said Gordon Brothers, Inc." The court stated that the jury should determine, "Whether it means that the plaintiff could reject the coal without sufficient reason or whether the quality of the coal must be so inferior as to justify its rejection."

The question injected by the court that the jury might decide whether or not the rejection was arbitrary and capricious had no place in the case, but did the defendant no harm. It gave them a chance when they should have had none. "The quality of the coal [was] to be judged solely by said Gordon Brothers, Inc.," and there was no evidence in the case which could have supported the theory that those acting for the plaintiff did so capriciously. The same may be said of the question: whether the second agreement modified or changed any of the rights of the plaintiff? That question was decided by our court on the appeal above referred to. Defendants' breach of contract was not in question for defendants' attempts to show excuse for non-performance failed. There was practically nothing left in the case for the jury, except to ascertain what the damages were. This was submitted to them very fairly by the lower court. That the plaintiff

supplied its needs principally with anthracite coal when the contract referred to bituminous coal operated in relief of the defendants because the price of anthracite was less than bituminous. That anthracite was claimed by the defendant to be an entirely different fuel does not change the fact that it was the best fuel at the lowest cost capable of carrying out the purpose for which the defendants had engaged to furnish the means.

The appellant raised the point that the plaintiff failed to prove by a fair weight of the evidence that they suffered damages as a result of the alleged breach of contract. We are unable to see how the appellant can urge this proposition. It seems plain that having contracted for coal sufficient to supply their needs for a definite period at a fixed price, and failing to get what they bargained for, they were damaged to the extent that they were required, in order to supply their needs, to expend a sum in excess of the amount which they had agreed to pay. This is the damage "directly and naturally resulting in the ordinary course of events from the seller's breach of contract." Act of 19 May, 1915 (Sales Act) P. L. 543, Section 67. An officer of the plaintiff was asked after plaintiff had proved its damages, what financial loss they had sustained if any, and answered, "I do not know but what financial loss we sustained we did not ask Kelley Brothers to stand for." We deem the argument, that this should have been an end to plaintiff's case, trivial. Having proved direct damage resulting from the loss of their bargain, the allusion of the witness was evidently to the indirect losses which might have resulted in the delay, etc., caused by defendant's breach. We do not attach the meaning which the defendant attempts to attach and hold that after having proved his loss in a clear and definite manner, the witness stultified himself by stating that he had none. The objec-

22

tion that the jury might add interest for such term "as they shall deem reasonable," is without merit, for evidently the jury did not give to the plaintiff as much interest as it was entitled.

We find no merit in any of the defendant's contentions and the judgment is affirmed.