492 A.2d 36

**NOWICKI CONSTRUCTION CO., INC., Appellee,**

v.

**PANAR CORP., N.V. Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 4, 1984.

Filed April 26, 1985.

Michael J. O'Neill, Doylestown, for appellant.

Frederick C. Horn, Lansdale, for appellee.

Before MONTEMURO, BECK and WATKINS, JJ.

BECK, Judge:

In this appeal we are asked to determine the extent, if any, to which two written documents signed by authorized agents of appellant Panar Corporation, N.V. (Panar), and appellee Nowicki Construction Company, Inc. (Nowicki), limit the amount collectible under Nowicki's mechanics' lien claim against Panar.[1] For the following reasons, we affirm the trial court's decision that neither document restricts Nowicki's mechanics' lien claim and that Nowicki is accordingly entitled to collect $37,460.99 on its lien claim.

---

1. This appeal follows the dismissal of Panar's timely exceptions to the trial judge's non-jury trial adjudication.

By a written contract of November 5, 1978, Nowicki undertook construction of a stone addition to a residence owned by Panar and occupied by Mr. and Mrs. Deutsch. In pertinent part, the contract provided that

[i]n no event shall the total cost of the [stone addition] project ... exceed the sum of $100,000.—(one hundred thousand dollars). Payment of all invoices for completed work or delivered materials shall be paid by Panar Corporation N.V. at the end of each week.... Labor invoices will also ... be paid at the end of each week in which they are presented.

In other words, the November 5 contract contemplated a "pay-as-you-go" arrangement with an aggregate cost of $100,000 or less.

Between November 6, 1978, and July 18, 1979, Nowicki submitted more than $100,000 in material and labor invoices which Panar partially paid in the amount of $122,327.13. In light of the unpaid balance on the submitted invoices, on July 23, 1979, Nowicki presented Panar with a written document that outlined certain work remaining to be done on the residential addition and stated that Nowicki's "fee for the completion of [the outlined] work [was] $5,000.00" The document further declared that Nowicki had "discounted in excess of $30,000.00 to [Panar's] account." Finally, the document bore a handwritten addendum, to wit, "All work to be completed by Aug. 4, '79 except gutters + drain spout, shutters, hand rail at steps for payment of $5,000—completion fee." Authorized agents of Panar and Nowicki signed the document and initialled the addendum.

■ Thereafter, Panar did not pay Nowicki $5,000 pursuant to the parties' July 23 agreement, and Nowicki filed a mechanics' lien claim against Panar. On November 13, 1979, Nowicki instituted suit on the lien claim for $38,-529.12,[2] the balance due on the invoices tendered to Panar

---

**2.** Although Nowicki's claim was for $38,529.12, the trial court only awarded Nowicki $37,460.99. The difference between the claim and the award reflects the trial testimony of Nowicki's president and sole shareholder, Allan J. Nowicki, who admitted that Panar had inadvert-

for materials and labor supplied by Nowicki after the signing of the parties' November 5 contract. Panar contended before the trial court, and again argues in this appeal, that Nowicki is not entitled to recover on its mechanics' lien claim either because the parties' November 5 contract restricted Nowicki's potential payment to $100,000 which amount plus an additional $22,327.13 Nowicki has already received or, alternatively, because Nowicki failed to finish certain work outlined in the parties' July 23 agreement which was a substituted contract that extinguished any prior agreement of the parties and limited Nowicki's potential payment to $5,000.[3]

"[A] mechanic's lien is a statutory proceeding, the action in rem being in the nature of collateral security for the payment of the debt due for work done or materials furnished" in accordance with a contract, express or implied. *Hoffman Lumber Co. v. Mitchell*, 170 Pa.Super. 326, 331, 85 A.2d 664, 667 (1952), *allocatur denied; Murray v. Zemon*, 402 Pa. 354, 167 A.2d 253 (1961); *Fisher Sprinkler Co. v. Ide*, 305 Pa.Super. 554, 451 A.2d 1015 (1982); Sections 201, 301 & 503 of the Mechanics' Lien Law of 1963, Act of August 24, 1963, P.L. 1175, 49 P.S. §§ 1201, 1301 & 1503.

Indisputably, the parties' original written contract of November 5 contained a $100,000 ceiling. However, the evidence of record clearly shows that the November 5 contract was not given strict adherence by either party. Nowicki submitted invoices totalling more than $100,000. Panar made partial payments of $122,327.13 on the ten-

ently been billed for slightly over one thousand dollars in materials that Nowicki had supplied and later removed from the Panar residential work site. Reproduced Record at 56a–57a.

**3.** Panar also argued before the trial court, and reiterates in this appeal, that Nowicki should not prevail on its lien claim because Nowicki's construction was not workmanlike and because Nowicki's invoices unreasonably exceeded Nowicki's actual expenses plus the profit margin to which the parties agreed in their November 5 contract. The trial court found no merit in these arguments. Having carefully reviewed the trial transcript, especially the testimony of the parties' architectural expert witnesses, we conclude that the trial court did not err in this regard.

dered invoices but did not promptly pay the full amount of all invoices as they were presented. That is, Panar's payments did not keep abreast of Nowicki's requests for payment as the building work progressed. Reproduced Record at 40a–41a.

At trial, Nowicki's president and sole shareholder, Allan J. Nowicki, explained that the discrepancies between Nowicki's actions and the parties' November 5 contract resulted from the parties' subsequent oral modifications of the November 5 contract. *E.g.*, Reproduced Record at 21a–31a, 158a. Mr. Nowicki testified, for example, that although the building plans designated vinyl flooring in the bathroom, Panar (acting through its agents Mr. and Mrs. Deutsch) later requested that imported Italian marble tiles be used. Reproduced Record at 27a, 353a. Mr. Nowicki stated that the use of marble tiles not only increased construction costs but also delayed completion of the work since the marble had to be specially ordered and installed. Reproduced Record at 44a, 353a. Regarding the marble tiles, Mrs. Deutsch indicated that she and her husband had always assumed that such flooring would be used in the bathroom but had never discussed the use of such materials until after the parties had signed the November 5 contract and work had begun on the residential addition. Reproduced Record at 234a. The architects who testified as expert witnesses for Panar and Nowicki both noted deviations between the building plans and the actual construction performed but lacked personal knowledge as to the reason for the deviations. Reproduced Record at 260a, 316a, 330a–333a.

Since there was evidence of record that the parties had made subsequent oral modifications of their November 5 contract by altering the building specifications and correspondingly, the building costs and building time, the trial court did not err in concluding that the $100,000 restriction in the November 5 contract did not bar Nowicki's mechanics' lien claim for materials and labor furnished beyond that amount.

Next, we consider whether the parties' July 23 written agreement prevents or limits Nowicki's recovery under its lien claim. Panar regards the July 23 agreement as a substituted contract which discharged any prior agreement of the parties and exclusively established the conditions for Nowicki's recovery against Panar. Nowicki views the July 23 agreement as an unperformed accord which did not discharge the previous obligations of the parties.

Whether an agreement constitutes a substitute contract or an accord is a matter of interpretation. *Hydro-Flex, Inc. v. Alter Bolt Co.*, 223 Pa.Super. 228, 296 A.2d 874 (1972); Restatement (Second) of Contracts § 279 comment c (1979). Substituted contracts and accords share many traits since both rest upon the elements of a valid contract. *Hydro-Flex, Inc.; Gordon Brothers, Inc. v. Kelley*, 92 Pa.Super. 485 (1927); Restatement (Second) of Contracts § 279 comment c (1979). Their differentiation lies chiefly in the parties' intent concerning their respective effect on any prior agreement of the parties. A substituted contract

> is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise in satisfaction of a previously existing claim while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction.

*Gordon Brothers, Inc.*, 92 Pa.Super. at 491 (citation omitted); *Buttonwood Farms, Inc. v. Carson*, 329 Pa.Super. 312, 478 A.2d 484 (1984) (a substituted contract displaces and extinguishes an extant valid contract); *Lazzarotti v. Juliano*, 322 Pa.Super. 129, 469 A.2d 216 (1983) (an accord requires actual payment or performance and is not satisfied by a "mere promise of future performance"). Since a substituted contract is accepted as "satisfaction of a pre-existing duty, [it] thus bar[s] the revival of the pre-existing duty following a breach of the [substituted] contract...." *Hydro-Flex, Inc.*, 223 Pa.Super. at 234, 296 A.2d at 878. However, where the terms of an accord are breached, the non-defaulting party "may enforce the accord, or, ... at his

option, enforce the underlying [*i.e.*, previous] agreement." *Zager v. Gubernick*, 205 Pa.Super. 168, 173–74, 208 A.2d 45, 49 (1965); Restatement (Second) of Contracts § 281 (1979).

■ "The party asserting a ... substituted contract has the burden of proving that the parties intended to discharge the earlier contract." *Buttonwood Farms, Inc.*, 329 Pa.Super. at 317, 478 A.2d at 486. In the present case, the record does not contain any clear evidence that the parties meant to substitute their July 23 agreement for any previous contract between them. The July 23 agreement does not expressly state that it supplants any other agreement of the parties. Rather, the July 23 agreement sets forth a $5,000 completion fee for work to be performed and declares that the fee represents a discount of more than $30,000 (the amount of Nowicki's mechanics' lien claim) for work already performed. The July 23 agreement therefore reveals the underpinnings of an accord.

■ Legal consideration for an accord arises when the parties have a legitimately disputed claim, and the creditor accepts " 'an amount less than the creditor claims to be due.... There must be an honest dispute and a person cannot create a dispute sufficient for the purpose of an accord and satisfaction by a mere refusal to pay a claim undisputed in fact.' " *Lazzarotti*, 322 Pa.Super. at 138, 469 A.2d at 220 (citation omitted). The parties' trial testimony in the case sub judice shows that Panar had refused to pay several thousand dollars in invoices submitted to it by Nowicki, *e.g.*, Reproduced Record at 39a–41a, and that Panar's refusal to tender payment resulted from Panar's contentions that the parties' November 5 contract confined the parties to a $100,000 budget, that Nowicki's construction was not workmanlike, and that Nowicki's invoices unjustifiably exceeded Nowicki's actual expenses plus the profit margin included in the parties' November 5 contract. *E.g.*, Reproduced Record at 194a–200a, 270a–75a. Hence, the record discloses an honest dispute between the parties concerning the amount owed by Panar to Nowicki. The

July 23 agreement documents Nowicki's willingness to accept Panar's payment of $5,000 in forbearance of a suit against Panar for the challenged outstanding balance of Nowicki's invoices.

■■ Because Panar did not satisfy the accord by tendering $5,000 to Nowicki, Nowicki could elect to enforce either the breached accord or any antecedent agreement of the parties which was to have been discharged by satisfaction of the accord. *Zager;* Restatement (Second) of Contracts § 281 (1979). In this instance, Nowicki chose to bring a mechanics' lien claim against Panar for the monies owed for materials and labor furnished under the parties' antecedent agreement, *i.e.,* the parties' subsequent oral modifications of their November 5 contract.

Accordingly, we affirm the order of the trial court which awarded Nowicki $37,460.99 on its mechanics' lien claim against Panar.

Order affirmed.