601 A.2d 1237

**NERNBERG & LAFFEY, Appellee,**

**v.**

**Alan PATTERSON, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 20, 1991.

Filed Dec. 31, 1991.

Reargument Denied March 4, 1992.

418

James A. Ashton, Pittsburgh, for appellant.

James R. Cooney, Pittsburgh, for appellee.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

In this action between a lawyer and his client for legal fees, a jury returned a verdict in favor of the lawyer for twenty thousand ($20,000) dollars. In response to post-trial motions, however, the trial court entered judgment n.o.v. in favor of the lawyer for forty-six thousand, four hundred forty-seven and 42/100 ($46,447.42) dollars, plus interest from January 1, 1985. The client has appealed.

In May, 1981, Alan Patterson retained his friend, Maurice Nernberg, to represent him in various legal matters involving, inter alia, Patterson's real estate investments. Nernberg, in response to Patterson's urgent plea for help, was instrumental in averting a threatened discontinuance of electrical service to an apartment building owned by Patterson. Before undertaking further representation, Nernberg required Patterson to execute a fee agreement which provided, inter alia, as follows:

> You will be billed once per month by this office and unless a written objection is received respecting such statement within ten days of your receipt of it, then it will be assumed that the fees set forth therein are agreed upon and deemed to be reasonable by you and our continuing to perform work on your behalf will be in reliance upon your agreement that each bill is reasonable.

Thereafter, Nernberg and members of his firm, Nernberg & Laffey, P.C., provided legal services to Patterson until November, 1984. As of November 1, 1984, by Nernberg's account, Patterson owed the firm a total of $50,537.42. Patterson made occasional payments thereafter, usually in amounts of $125 to $250, which Nernberg applied to the account.

On May 14, 1987, Nernberg filed an action to recover unpaid legal fees in the amount of $47,947.42. In the complaint it was alleged that Patterson had been billed monthly and had not objected to the reasonableness of the fees charged. In his answer and at trial, Patterson contended that he and Nernberg, in numerous personal meetings and by correspondence, had discussed Patterson's objections to the amounts of Nernberg's charges, Patterson's inability to pay the same, and their mutual expectation that the debt would be satisfied by the payment of an unspecified amount after Patterson had disposed of some of his real estate. Finally, Patterson contended that there had been an accord and satisfaction. Nernberg had agreed, Patterson alleged and testified at trial, to accept in full satisfaction of his claim the sum of fifteen thousand ($15,-000) dollars and two building lots having a total value of five thousand ($5,000) dollars ($2,500 each) and located in Laurel Mountain Village, a tract which Patterson was then developing.

After a jury returned a verdict for Nernberg in the amount of twenty thousand ($20,000) dollars,[1] the trial court concluded that there was insufficient evidence that Patterson had objected in writing to Nernberg's charges. Therefore, the court entered judgment n.o.v. in favor of Nernberg for the full amount of his claim.

A judgment n.o.v. may properly be entered only in a clear case where the facts are such that no two reason-

---

1. Prior to trial, Nernberg moved for judgment on the pleadings, but his motion was denied. A subsequent partial judgment on the pleadings for $15,000 was reversed by the Superior Court. *Nernberg v. Patterson,* 388 Pa.Super. 672, 560 A.2d 245 (1989).

able persons can fail to agree that the verdict is improper. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 61, 584 A.2d 888, 891 (1990); *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 351, 414 A.2d 100, 103 (1980); *Fleck v. Durawood, Inc.*, 365 Pa.Super. 123, 127, 529 A.2d 3, 5 (1987); *Northwest Savings Ass'n v. Distler*, 354 Pa.Super. 187, 191, 511 A.2d 824, 825 (1986). In deciding a motion for judgment n.o.v., a court is required to consider the evidence, as well as all reasonable inferences which may be drawn therefrom, in the light most favorable to the party which has won the verdict. *Mitzelfelt v. Kamrin, supra; Atkins v. Urban Redevelopment Authority of Pittsburgh, supra; Vernon v. Stash*, 367 Pa.Super. 36, 45–46, 532 A.2d 441, 445–446 (1987), quoting *Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 396, 504 A.2d 896, 898 (1986) and *Kearns v. Clark*, 343 Pa.Super. 30, 34–35, 493 A.2d 1358, 1360 (1985). In determining whether the evidence is sufficient to support the verdict, a reviewing court must consider all the evidence received, whether the trial court's evidentiary rulings thereon were correct or incorrect. *Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 508, 559 A.2d 550, 552 (1989), citing *Niles v. Fall Creek Hunting Club, Inc.*, 376 Pa.Super. 260, 265, 545 A.2d 926, 929 (1988); *Dorn v. Stanhope Steel, Inc.*, 368 Pa.Super. 557, 565, 534 A.2d 798, 802 (1987), *allocatur denied*, 518 Pa. 656, 544 A.2d 1342 (1988). If a trial court has erred in the receipt of evidence, the remedy is to grant a new trial. *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970); *Niles v. Fall Creek Hunting Club, Inc., supra* 376 Pa.Super. at 265, 545 A.2d at 929.

■ Because Patterson never performed his asserted agreement to pay fifteen thousand ($15,000) dollars and convey two building lots to Nernberg, it is incorrect to refer to his defense as an accord and satisfaction. The alleged agreement would more accurately be characterized as an executory accord, which conditionally suspends but does not discharge the original duty, or a substituted contract, which has the effect of discharging the original obligation. The

difference was recognized and explained in *Nowicki Construction Co. v. Panar Corp., N.V.,* 342 Pa.Super. 8, 492 A.2d 36 (1985), as follows:

> Whether an agreement constitutes a substitute contract or an accord is a matter of interpretation. *Hydro–Flex, Inc. v. Alter Bolt Co.,* 223 Pa.Super. 228, 296 A.2d 874 (1972); Restatement (Second) of Contracts § 279 comment c (1979). Substituted contracts and accords share many traits since both rest upon the elements of a valid contract. *Hydro–Flex, Inc.; Gordon Brothers, Inc. v. Kelley,* 92 Pa.Super. 485 (1927); Restatement (Second) of Contracts § 279 comment c (1979). Their differentiation lies chiefly in the parties' intent concerning their respective effect on any prior agreement of the parties. A substituted contract
>
>> is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise in satisfaction of a previously existing claim while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction.
>
> *Gordon Brothers, Inc.,* 92 Pa.Super. at 491 (citation omitted); *Buttonwood Farms, Inc. v. Carson,* 329 Pa.Super. 312, 478 A.2d 484 (1984) (a substituted contract displaces and extinguishes an extant valid contract); *Lazzarotti v. Juliano,* 322 Pa.Super. 129, 469 A.2d 216 (1983) (an accord requires actual payment or performance and is not satisfied by a "mere promise of future performance"). Since a substituted contract is accepted as "satisfaction of a pre-existing duty, [it] thus bar[s] the revival of the pre-existing duty following a breach of the [substituted] contract...." *Hydro–Flex, Inc.,* 223 Pa.Super. at 234, 296 A.2d at 878. However, where the terms of an accord are breached, the non-defaulting party "may enforce the accord, or, ... at his option, enforce the underlying [i.e., previous] agreement." *Zager v. Gubernick,* 205 Pa.Super. 168, 173–74, 208 A.2d 45, 49 (1965); Restatement (Second) of Contracts § 281 (1979).

*Id.,* 342 Pa.Superior Ct. at 15–16, 492 A.2d at 39–40. In the instant case, it was Patterson's contention that the parties had reached a substitute agreement regarding the amount of legal fees to be paid to Nernberg.

█ The burden of proving a substituted agreement was on Patterson. *Duryea v. Long,* 191 Pa.Super. 511, 159 A.2d 259 (1960). He was required to prove the existence of a new contract. *Brunswick Corp. v. Levin,* 442 Pa. 488, 491, 276 A.2d 532, 534 (1971); *Hayden v. Coddington,* 169 Pa.Super. 174, 177, 82 A.2d 285, 286–287 (1951). Thus, he had to prove a "meeting of the minds." *Brunswick Corp. v. Levin, supra; Suits To Use v. Aetna Casualty & Surety Co.,* 106 Pa.Super. 231, 161 A. 592 (1932). It was also necessary that he show the existence of consideration which, in this case, meant the existence of a bona fide dispute between the parties. *Brunswick Corp. v. Levin, supra; Law v. Mackie,* 373 Pa. 212, 221, 95 A.2d 656, 660 (1953), citing *Lucacher v. Kerson,* 355 Pa. 79, 48 A.2d 857 (1946); *Nowicki Construction Co. v. Panar Corp., N.V., supra* 342 Pa.Super. at 16, 492 A.2d at 40; *Lazzarotti v. Juliano,* 322 Pa.Super. 129, 138, 469 A.2d 216, 220 (1983); *Hagerty Oil Co. v. Chester County Security Fund, Inc.,* 248 Pa.Super. 456, 457–458, 375 A.2d 186, 187 (1977).

█ Patterson introduced evidence at trial which, if believed, showed that neither he nor Nernberg had complied fully with the formalities of the written fee agreement. There was testimony, by Patterson and by Janet Welsh, his secretary, that Patterson had not received bills from Nernberg on a monthly basis. On one occasion, after more than a full year had passed, a packet of monthly bills totalling approximately $40,000 was received. Patterson testified that when the amount of the legal fees became known to him he verbally objected because he deemed the charges excessive. He said that Nernberg, on several occasions, had indicated a willingness to settle the account for an unspecified amount in the future when Patterson liquidated a portion of his real estate holdings. Finally, Patterson testified that on November 11, 1986, after a buyer had been

obtained for Patterson's Laurel Mountain Village property, Nernberg verbally agreed to settle the account in exchange for $15,000 in cash and two building lots at Laurel Mountain Village.

This evidence was sufficient to permit a jury to find that the amount of the charges made by Nernberg for services rendered was the subject of a bona fide dispute and that Nernberg had entered into an agreement to resolve the dispute in exchange for $15,000 in cash and the deeds to two building lots having a value of two thousand, five hundred dollars each. If the jury believed this evidence, it could, as it did, find that the amount owed by Patterson for legal fees was twenty thousand ($20,000) dollars.

Because there was evidence to support the jury's verdict, the trial court erred when it interfered with the jury's findings and entered judgment n.o.v. in favor of the appellee-plaintiff for the full amount of legal fees claimed.

Having entered a judgment n.o.v., the trial court did not decide Nernberg's motion for new trial. Therefore, we will remand for a determination of the issues raised in appellee's motion for new trial.

Reversed and remanded for a determination of appellee's motion for new trial. Jurisdiction is not retained meanwhile.