**CONSTITUTION BANK**

v.

**William KALINOWSKI and Andrea Kalinowski.**

**No. CIV. A. 95–3955.**

United States District Court, E.D. Pennsylvania.

March 3, 1999.

David M. Giles, Ominsky, Welsh, Rosenthal & Steinberg, P.C., Philadelphia, PA.

Daniel J. Dugan, Shona K. Gibson, Spector Gadon and Rosen, P.C., Philadelphia, PA, Kelly Rae Ramsdell, Philadelphia, PA, for Plaintiff.

Gilbert B. Abramson and Freedman, Philadelphia, PA, Michael B. Tolcott, Abramson & Freedman, L.L.C., Philadelphia, PA, for Defendants.

## MEMORANDUM

LUDWIG, District Judge.

Plaintiff Constitution Bank moves for a declaratory judgment on whether a "Set-

tlement Agreement" entered into by the parties on December 15, 1992 superseded a 1989 loan agreement and defendants' loan guaranty. The issue is a matter of contract and is controlled by Pennsylvania law.[1] Jurisdiction is diversity. 28 U.S.C. §§ 1332(a), 2201(a).

In 1989, plaintiff issued a loan for $250,-000 to Transact Property Company, a corporation in which defendant William Kalinowski was a shareholder. The loan was evidenced by a promissory note. Defendants William and Andrea Kalinowski, along with three other couples,[2] guaranteed the loan in writing. In August 1992, plaintiff notified defendants that the loan was in default and that the balance due of $254,953.75 had been accelerated. Joint pretrial stip., ex. D. Defendants—and two of the other guarantor couples—thereupon filed an action in state court for injunctive relief to prevent entry of a confession of judgment against them under the 1989 guaranty and for damages for alleged bank violations relating to the loan agreement. *Transact Property Company v. Constitution Bank,*, No. 1232 (C.P.Phila.Oct. Term, 1992). *Id.,* agreed facts, ¶ 9.

There is no significant issue as to the facts. In December 1992, plaintiff bank and the four sets of guarantors executed a "Settlement Agreement," which recited that it was intended to resolve all disputes. Settlement agreement, at 2. Under the agreement, the commercial loan made to Transact was to be replaced by four separate consumer loans of $63,750, allocated among each of the four guarantor couples. Settlement agreement, ¶¶ 1–2. As part of the agreement, each couple was required to provide collateral in the form of a second mortgage on their home.[3] *Id.,* ¶¶ 3(c), 4(c), 5(c), 6(c). Thereafter, however, one of the four couples—N. Robert and Janet Andes—was unable to give a second mortgage because Mr. Andes' parents, the holders of an existing second mortgage, refused to subordinate. Joint pretrial stip., agreed facts, ¶ 14. Eventually, after a period of several months, the bank did not issue any of the consumer loans, and the closing contemplated by the settlement agreement did not occur. *Id.,* ¶ 15.

In 1995, plaintiff confessed judgment in this court against defendants under the 1989 loan documents. *See* order, June 26, 1995. This judgment was opened to permit defendants to assert the defense that their guaranty was superseded by the settlement agreement. *See* order, August 28, 1998. Plaintiff thereafter filed an amended complaint, adding count II, seeking a declaratory judgment as to the enforceability of the 1992 settlement agreement.[4]

Settlement agreements are to be interpreted according to principles of contract law, the foremost of which is to give effect to the parties' intent. *See In re Columbia Gas System, Inc.,* 50 F.3d 233, 241 (3d Cir.1995). Ordinarily, the interpretation of a contract is a task for the courts. *See Guaranty Nat'l Ins. Co. v. Vanliner Ins. Co.,* 1998 WL 351743, *5 (E.D.Pa.1998) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 304, 469 A.2d 563, 566 (1983)). In ascertaining contractual intent, the

1. The parties agree that Pennsylvania law applies—the 1992 agreement was negotiated in Pennsylvania and states it is governed by the laws of this state. Settlement agreement, ¶ 26.

2. The other couples—Stephen and Karen Kalinowski, N. Robert and Janet Andes, and David and Caren Kessler—are not parties to this action.

3. Defendants were given the alternative of placing $65,000 in an escrow account in lieu of securing a second mortgage. Settlement agreement, ¶ 6(c). The settlement agreement also gave the bank discretion to reject a second mortgage as collateral if, upon a real estate appraisal, it decided there was insufficient equity in the guarantors' home—or to demand additional security. Settlement agreement, ¶ 12.

4. Plaintiff also added a breach of contract claim (count III), in the event that the settlement agreement was upheld. In light of this decision, count III is moot.

plain language of the agreement controls. Proper construction also requires consideration of "the situation of the parties, the attendant circumstances and the ends they sought to achieve." *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir.1997). *See also Chadwick v. Capital Advisors, Inc.*, 1992 WL 121616, *5 (E.D.Pa. May 26, 1992) ("In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all the circumstances ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.") (quoting *Walton v. Philadelphia Nat'l Bank*, 376 Pa.Super. 329, 338, 545 A.2d 1383, 1388 (1988)).

Here, the settlement agreement was not a substituted contract for the original loan agreement and guarantees. It has not been demonstrated that the later agreement was intended to extinguish the guarantors' prior obligations upon acceptance of promises of performance. *See Nowicki Construction*, 342 Pa.Super. 8, 15, 492 A.2d 36, 40 (1985) ("The party asserting a ... substituted contract has the burden of proving that the parties intended to discharge the earlier contract.") (citation omitted). Instead, the settlement agreement was an executory accord. *See Restatement (Second) of Contracts* § 281 (1979) ("(1) An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty."). With an accord, it is performance of the substituted duty, not its mere promise, that discharges the original duty. *See River Road Development Corp. v. Carlson Corp.*, 1992 WL 212351, *23 (E.D.Pa. August 27, 1992) (citing *Nowicki Construction*, 342 Pa.Super. at 15, 492 A.2d at 40). *See also Restatement (Second) of Contracts* § 281 cmt. a (1979) ("It is the essence of an accord that the original duty is not satisfied until the accord is performed....").

Under the settlement agreement, the express condition to be fulfilled was the issuance of consumer loans to the four sets of guarantors based on their putting up satisfactory collateral. Settlement agreement, ¶¶ 3(c), 4(c), 5(c), 6(c). The thrust of the settlement agreement was to convert the original loan and the guarantees into collectible consumer loans. Its explicit predicate was the soundness of the guarantors' collateral—second mortgages or, in defendants' instance, the equivalent in cash, or such additional collateral as was sought by the bank. To regard the settlement agreement as a substituted contract rather than an executory accord contradicts its unambiguous wording and is simply not plausible.

Moreover, nothing in the settlement agreement suggests that the bank was obligated to close on defendants' consumer loan independently of the other guarantors' loans. As the agreement states, the bank was to apply "in full satisfaction of the [guarantors'] obligations under the Note, the proceeds received by the Bank in the total amount of $250,000 from four (4) separate consumer loans in the amount of $63,750 each made by [the guarantors]." Settlement agreement, ¶ 2. Next, the terms and conditions of the four separate loans are set forth. Settlement agreement, ¶¶ 3, 4, 5, 6. Thereafter, the agreement specifies that the contract may be executed in a number of counterparts "all of which taken together shall constitute one and the same instrument." Settlement agreement, ¶ 27. Paragraph 12—although not controlling on the facts of this case—further illustrates the all-or-nothing approach intended by the parties. That paragraph relates to the bank's right to obtain collateral in addition to the second mortgages. Upon non-compliance with the bank's request by any of the guarantors, the bank reserved the right to withdraw its assent to the agreement, at which time the agreement would be considered "null and void and without any legal effect and the parties [ ] returned to their respective positions prior to the execution of

[the] Agreement, as if [the] Agreement had never been executed and delivered."[5]

Defendants argue that because plaintiff did not withdraw its assent to the agreement via the framework of ¶ 12, plaintiff cannot rescind. This argument is unpersuasive. Paragraph 12 looked to a situation in which plaintiff requested more collateral than that called for in the agreement—the second mortgages. Here, the specific collateral itself was not forthcoming.

Therefore, additional collateral was not the issue. The agreement does not limit the bank's right of rescission to ¶ 12, and its silence on the subject does not convert ¶ 12 into an exclusive procedure. If anything, the agreement in its totality empowers the bank with broad discretion not to proceed with the consumer loans if its conditions are not met by all the guarantors.

Given this contextual interpretation, the settlement agreement contemplated a substitution for the original loan of four consumer loans, in equal amounts. It was not to be divisible as to the guarantors until the consumer loans were in place. Failure of one set of guarantors to comply with the conditions of the executory accord constituted non-compliance with the accord in its entirety. Upon notice of the inability to provide the requisite security on the part of one of the guarantor couples, plaintiff refused to close on any of the consumer loans. After attempts at resolution, plaintiff notified defendants of its withdrawal from the settlement agreement. Joint pretrial stip., ex. F–H. Upon such rescission, the rights and duties existing under · the original loan and guaranty agreements were re-instated. Having been duly vitiated, the settlement agreement became unenforceable.

5. Plaintiff did not request additional collateral as it could have done under ¶ 12. However, the structure of ¶ 12 shows the parties' intent as to the entire agreement—that substitution

*ORDER*

AND NOW, this ____ day of March, 1999, declaratory judgment is entered in favor of plaintiff Constitution Bank and against defendants William and Andrea Kalinowski on count II of the amended complaint. All claims, counterclaims, and defenses arising from the settlement agreement dated December 15, 1992 are dismissed. A memorandum accompanies this order.

of the consumer loans for the original commercial loan was as "a package" and not four separate transactions.