J-A23041-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| THOMAS A. DALFONSO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| R. DONALD BENSON, | : | |
| | : | |
| Appellee | : | No. 62 WDA 2016 |

Appeal from the Judgment Entered January 27, 2016
in the Court of Common Pleas of McKean County
Civil Division at No(s): No. 2009-1474

BEFORE:    LAZARUS, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED NOVEMBER 17, 2016**

Thomas A. Dalfonso appeals from the judgment[1] entered against him and in favor of R. Donald Benson following a non-jury trial in this mortgage foreclosure action.  We affirm.

In 1994, Omni Capital (Omni) lent $200,000 to United Business Enterprises (UBE) upon the personal guarantee of UBE's owners Richard and Pamela Robidoux (the Robidouxs, collectively).  After UBE defaulted, a settlement agreement (the 1997 Agreement) was reached under which the Robidouxs agreed to pay $273,435 in installments.  The 1997 Agreement

---

[1] Dalfonso filed his notice of appeal before judgment had been entered.  The appeal was perfected, however, following this Court's issuance of a rule, when judgment was entered on the verdict on January 27, 2016.  ***See*** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

*Retired Senior Judge assigned to the Superior Court.

was secured by mortgages on several of the Robidouxs' properties, including the McKean County oil, gas, and mineral (OGM) rights at issue in the instant foreclosure action. When the Robidouxs failed to meet their obligations under the 1997 Agreement, Omni obtained a judgment in Massachusetts against the Robidouxs for $273,435.

In 2000, appellee Benson purchased at a tax sale the OGM rights to the McKean County properties at issue, subject to the mortgages executed as required by the 1997 Agreement.

In 2002, with Omni's judgment against the Robidouxs not satisfied, Omni entered into another settlement agreement with the Robidouxs and UBE (the 2002 Agreement). Under the 2002 Agreement, Omni agreed to accept $55,400, to be paid in installments, in full satisfaction of the outstanding debts of UBE and the Robidouxs. The 2002 Agreement did not require mortgages as security, but did provide that if its terms were not met, the 1997 judgment "will be deemed to be in full effect, minus any sums that have been received, plus any applicable interest and costs." 2002 Agreement at ¶ 6. The 2002 Agreement also contained the following integration clause: "This Agreement is the entire agreement among the parties with respect to the subject matter hereof and supercedes [*sic*] all prior and contemporaneous oral and written agreements and discussions." *Id.* at ¶ 10. After the Robidouxs and UBE defaulted on the 2002 Agreement, Omni sold the debt to appellant Dalfonso in 2004 for $20,000.

In 2005, Benson filed an action to quiet title as to the McKean County OGM rights. An order was entered in 2007 providing that Benson's OGM interests were held subject to Dalfonso's mortgages. However, the validity of the mortgages was not decided at that time.

In 2009, Dalfonso filed the instant action to foreclose on the mortgages. Following trial, the trial court filed a memorandum and order detailing its findings of fact and legal conclusions. Memorandum and Order, 11/16/2015. Therein, the trial court held that the 2002 Agreement constituted a novation of the 1997 Agreement, and that, because the 2002 Agreement did not provide for mortgages as had the 1997 Agreement, no valid mortgages existed in 2004 when Dalfonso purported to purchase them along with the debt of UBE and the Robidouxs. Accordingly, the trial court entered a verdict in favor of Benson and against Dalfonso.

On November 25, 2015, Dalfonso timely filed a post-trial motion which the trial court denied on December 11, 2015. Dalfonso timely filed a notice of appeal on January 6, 2016. The trial court ordered Dalfonso to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Dalfonso timely filed a statement. The trial court subsequently filed a statement pursuant to Pa.R.A.P. 1925(a) directing this Court to its November 16, 2015 Memorandum and Order.

Dalfonso presents this Court with the same question in his 1925(b) statement: "Whether the trial court erred in concluding that the 2002

Settlement Agreement invalidated or otherwise extinguished the OGM mortgages?" Dalfonso's Brief at 4 (unnecessary capitalization omitted).

Before we consider the merits of Dalfonso's issue, we must determine whether Dalfonso has preserved it for our review. In support of his position that the trial court erred, Dalfonso argues (1) the 2002 Agreement did not replace an existing contract because the 1997 Agreement had merged into the judgment Omni obtained in 1997, and (2) even if a novation occurred, the mortgages were not affected as they are separate obligations. *Id.* at 15. Benson argues that Dalfonso has waived the bases for relief by failing to identify them clearly in his 1925(b) statement. Benson's Brief at 9.

The trial court, upon review of Dalfonso's 1925(b) statement, indicated as follows: "It is impossible from [Dalfonso's] concise statement to identify with any certainty which part or parts of my Memorandum and Order are the subject of his appeal. Consequently, I am unable to further elucidate the findings of fact or discussion contained in the November 16th Memorandum." Pa.R.A.P. 1925(a) Statement, 11/23/2016, at 1.

"An overly vague or broad Rule 1925 statement may result in waiver." *Majorsky v. Douglas*, 58 A.3d 1250, 1258 (Pa. Super. 2012). The reasons for this waiver rule are as follows.

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

> In other words, a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all. While [**Commonwealth v. Lord**, [] 719 A.2d 306 (Pa. 1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his concise statement, for the reasons set forth above we conclude that **Lord** should also apply to concise statements which are so vague as to prevent the court from identifying the issue to be raised on appeal. In the instant case, [the] appellant's Concise Statement was not specific enough for the trial court to identify and address the issue [that the] appellant wished to raise on appeal. As such, the court did not address it. Because [the] appellant's vague concise statement has hampered appellate review, it is waived.

**Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa. Super. 2006) (quoting **Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa. Super. 2006)) (unnecessary capitalization omitted).

Here, Appellant's statement that "the trial court erred in concluding that the 2002 Settlement Agreement invalidated or otherwise extinguished the OGM mortgages" does not evoke the claims of merger and separateness upon which he bases his right to relief. The trial court has filed no opinion addressing these issues. Our review of the issues unquestionably is hampered, as we are unable to determine whether the trial court's resolution of those issues was erroneous when we have to guess at the legal and/or factual bases for the trial court's rejections of Dalfonso's positions.

Accordingly, we hold that Dalfonso's issues are waived. **See**, **e.g.**, **Majorsky**, 58 A.3d at 1258–59 (holding that arguments that the trial court erred in granting summary judgment on *res judicata* grounds because an

earlier motion was denied were waived on appeal because "these considerations were not raised in clear terms in Appellants' Rule 1925(b) statement, and the trial court did not address them in disposing of the *res judicata* issue in its original memorandum granting Appellees' second motion for summary judgment or in its Rule 1925(a) opinion").

Even if Dalfonso had preserved his claims for our review, he has failed to convince us that the trial court erred and that he is entitled to relief as a result.[2]

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Lynn v. Pleasant Valley Country Club*, 54 A.3d 915, 919 (Pa. Super. 2012) (quoting *Lebanon County Hous. Auth. v. Landeck*, 967 A.2d 1009, 1012 (Pa. Super. 2009)).

---

[2] *In re Estate of Coombs*, 784 A.2d 150, 155 (Pa. Super. 2001) ("It is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law.").

> The doctrine of novation, or substituted contract, applies where: (i) a prior contract has been displaced, (ii) a new valid contract has been substituted in its place, (iii) there exists sufficient legal consideration for the new contract, and (iv) the parties consented to the extinction of the old and replacement of the new. A novation is accepted by the parties as satisfaction of a pre-existing duty, [which] thus bars the revival of the pre-existing duty following a breach of the substituted contract. However, whether a contract has the effect of a novation primarily depends upon the parties' intent. The party asserting its existence bears the burden of demonstrating the parties had a meeting of the minds.

*First Lehigh Bank v. Haviland Grille, Inc.*, 704 A.2d 135, 138–39 (Pa. Super. Ct. 1997) (internal quotation marks and citations omitted).

The trial court held that Benson proved all of the elements necessary to establish a novation. Specifically, it held that: (i) & (ii) "[t]here is no dispute that both the 1997 [] Agreement and the 2002 [] Agreement are valid contracts. It could not be clearer, from the explicit terms of the 2002 Agreement, that the latter replaced the former," Trial Court Opinion, 11/16/2015, at 5; (iii) there existed sufficient consideration for the new contract, as the 2002 Agreement included settlement of another civil action between the parties that had not been resolved, *id.*; and (iv) consent was proven by the terms of the 2002 Agreement itself, which stated that the parties "have entered into this Agreement willingly, and are not under duress." *Id.* at 6. The trial court thus found that it was the intention of the parties that the 2002 Agreement supplanted the 1997 Agreement and the mortgage interests secured by it. *Id.* "Consequently, it follows, Dalfonso

cannot foreclose on mortgages that secured the 1997 Agreement when all that was transferred to him in his 2004 purchase from Omni was the obligations and related security arrangements contained in the 2002 Agreement." *Id.*

In this Court, Dalfonso claims that the 2002 Agreement could not have constituted a novation of the 1997 Agreement because the 1997 Agreement ceased to exist as a valid contract when the 1997 judgment was entered, as the Agreement merged into the judgment. Dalfonso's Brief at 17.

Dalfonso cites no authority that provides that a contract ceases to be valid for novation purposes after a judgment is entered upon it. Rather, he constructs his argument upon the foundation of a federal bankruptcy court case in which the court noted that "[u]nder Pennsylvania law, it is well established that upon entry of a judgment the contractual relationship between the parties that gave rise to the debt merges into the judgment."[3] *In re Foy*, 469 B.R. 209, 214 (Bankr. E.D. Pa. 2012). Aside from the fact that the case has no precedential value in this Court, the issue decided therein is not at all analogous to the instant case. The court in *Foy*

---

[3] Pennsylvania cases relied upon by the *Foy* court in discussing Pennsylvania law provide not that a contract ceases to be "valid" after judgment is entered, but that the causes of action upon agreement, including both those actually litigated and those that could have been litigated, are what merge into a judgment. *See*, *e.g.*, *Kessler v. Old Guard Mut. Ins. Co.*, 570 A.2d 569, 573 (Pa. Super. 1990) ("[T]he finality of a judgment extends not only to matters actually determined but also to matters which could properly have been raised and determined therein.").

determined that the creditor's assignee of the debtor's contract did not also obtain the judgment entered against the debtor on those accounts because the assignment referenced only the accounts and not the judgment. We fail to see the relevance of that case to Dalfonso's argument that a judgment invalidates for purposes of a novation the contract which gave rise to the judgment. This argument does not persuade us that the trial court erred.

Dalfonso also argues that, even if there had been a novation, the mortgage interests were not extinguished by the supplanting of the 1997 Agreement because "a mortgage and the debt it secures are separate obligations." Dalfonso's Brief at 18. Again citing a non-binding federal court case, Dalfonso claims that it is "well established in Pennsylvania that a mortgagee may pursue remedies on both the mortgage and the underlying debt at the same time." *Id.* (citing *Miners Sav. Bank of Pittston, Pa. v. United States*, 110 F. Supp. 563, 566 (M.D. Pa. 1953)).[4]

Dalfonso is correct that debts and the mortgages that secure them are separate obligations under Pennsylvania law. However, as Benson aptly notes, it is also true that once the debt that a mortgage secures is eliminated for any reason, the mortgage is extinguished: "'The debt being every thing, and the mortgage barely a security for the payment of it, it

_____

[4] Again, the case upon which Dalfonso builds his argument bears no resemblance to the instant case, as *Miners Savings Bank* was a quiet title action by a bank to prevent the federal government from foreclosing on a tax lien on a property against which the bank had already obtained an *in rem* judgment in mortgage foreclosure.

follows of necessity, that whatever affects the debt, will produce a corresponding effect upon the mortgage. If the debt be extinguished by any means, the mortgage will become so likewise.'"[5] Benson's Brief at 23 (quoting *Weir v. Potter Title & Mortgage Guarantee Co.*, 185 A. 630, 633 (Pa. 1936)). *See also Kaylor v. Cent. Trust Co. of Harrisburg*, 36 A.2d 825, 827 (Pa. 1944) (observing that a note and a mortgage "taken for the same debt are distinct securities, possessing dissimilar attributes subject to different remedies, but the payment of either discharges both, and a release or extinguishment of either, without actual payment, is a discharge of the other, unless otherwise intended by the parties" (citation and internal quotation marks omitted)).

Dalfonso acknowledges that the mortgages "secure[d] payment of '$273,435.00 based upon the terms of a certain settlement agreement dated August 5, 1997'" among Omni and the Robidouxs. Dalfonso's Reply Brief at 10 (quoting the mortgages collectively admitted at trial as Dalfonso's Exhibit

_____

[5] Benson also points out that, although Dalfonso obtained the mortgages in assignment from Omni, he did not obtain from Omni assignment of the underlying note, which in this case is the 1997 Agreement, and for that reason Dalfonso lacked the ability to foreclose. Benson's Brief at 25 (citing *CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 68 (Pa. Super. 2016) ("A person foreclosing on a mortgage, however, also must own or hold the note. This is so because a mortgage is only the security instrument that ensures repayment of the indebtedness under a note to real property. A mortgage can have no separate existence." (citation omitted)); *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.")).

6). The 2002 Agreement supplanted the 1997 Agreement. The 2002 Agreement provided that the 1997 **judgment** would once again "be deemed to be in effect" upon breach of the 2002 Agreement, 2002 Agreement at ¶ 6, but did not provide for revival of any part of the 1997 **Agreement** (as opposed to the 1997 judgment).

Therefore, the trial court reasonably found that, based upon the terms of the 2002 Agreement, Omni ceased holding mortgages to assign because "the 2002 Agreement, as a substitute for the 1997 Agreement, did not require the entry of any mortgage as security or explicitly provide for the mortgages previously entered." Trial Court Opinion, 11/16/2015, at 6-7. The trial court properly concluded that breach of the 2002 Agreement did not revive the duty to provide mortgages as security for the 1997 Agreement. *See Nernberg & Laffey v. Patterson*, 601 A.2d 1237, 1239 (Pa. Super. 1991) ("Since a substituted contract is accepted as satisfaction of a pre-existing duty, [it] thus bar[s] the revival of the pre-existing duty following a breach of the [substituted] contract…." (citation and quotation marks omitted)). As such, the trial court correctly held that "there were no valid mortgages for Dalfonso to purchase" in 2004. Trial Court Opinion, 11/16/2015, at 7.

For the foregoing reasons, Dalfonso has failed to convince us that he is entitled to relief from this Court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2016