STANDARD BRANDS INCORPORATED, Appellant, *v.* ROBERT STRAILE, Respondent, et al., Defendant.

First Department, June 24, 1965.

*William M. Bradner, Jr.,* of counsel (*Francis P. Bensel* with him on the brief; *Dunnington, Bartholow & Miller,* attorneys), for appellant.

*Charles Lichtenstein* of counsel (*Schneider & Lichtenstein,* attorneys), for respondent.

*Per Curiam.* Plaintiff is the holder of a promissory note given by the corporate defendant and guaranteed by the individual defendant. It appeals from an order denying its motion for summary judgment against the individual guarantor.

The issue is whether the guarantor of a subordinated unsecured obligation may, in an action brought by the subordinated creditor, defend on the ground that the debtor is also in default on its obligation to the senior creditor. It is concluded that although that default may be a defense to the action against the debtor, the subordinated creditor is nevertheless entitled to summary judgment against the guarantor.

The basic facts are not in issue. On February 26, 1964, plaintiff, Standard Brands, Inc., and the principal debtor, Robert Straile Co., Inc., entered into an " exclusive purveyor agreement " as part of a transaction under which plaintiff undertook to lend $50,000, to be evidenced by the debtor's promissory note, which was executed by the debtor the same day. The agreement and note were executed through its president, Robert Straile. In a guarantee of the note, executed by the guarantor, Robert

Straile, in his individual capacity, he did: "unconditionally guarantee to Standard Brands, Incorporated, its successors and assigns, and to every subsequent holder of the within Promissory Note, irrespective of the * * * enforceability thereof, that all sums payable on the within Promissory Note shall be promptly paid in full, in accordance with the provisions thereof, at maturity, by acceleration or otherwise, and, in the case of any extension of time of payment or renewal in whole or in part, all sums shall be promptly paid when due according to such extension or extensions, renewal or renewals, at maturity, by acceleration or otherwise."

The "exclusive purveyor agreement" referred to the note and guarantee and provided, in general terms, for the subordination of the note to certain subsequent additional indebtedness to be incurred by the debtor.* It is not disputed that such subsequent indebtedness was in fact incurred by the debtor corporation to two other creditors or that these subsequent creditors became senior creditors as beneficiaries of the subordination agreement.

It is now contended by the subordinated creditor that the subordination clause merely affects its rights to the debtor's assets insofar as such rights may conflict with the claims of the senior creditors. It therefore urges that, properly construed, the subordination clause does not affect its right to sue the debtor or the guarantor.

At the outset the guarantor raises an apparent ambiguity in the subordination clause, which states merely that the obligation to plaintiff on the note is subordinated to that of the two senior creditors, but does not, unfortunately, otherwise define the rights of the various creditors. There is ambiguity but it does not

---

* The subordination clause provides: "No indebtedness shall rank prior to the indebtedness of the Note except for the aforementioned indebtedness not to exceed $2,000,000 to an institutional lender, and said aforementioned indebtedness not to exceed $2,000,000 to an institutional lender shall rank prior to the indebtedness of the Note only to the extent that said aforementioned indebtedness not to exceed $2,000,000 to an institutional lender may be made payable in full should a default by Fair Company occur under the instrument evidencing it; otherwise, provided Fair Company is not in default under such instrument, nothing in such instrument shall prohibit, impede or in any manner deter Fair Company from paying the Note in accordance with its terms in five equal monthly installments of $8,333.33 and one installment of $8,333.35 on the first days of June through November 1964 inclusive. Upon request by Fair Company, Brands agrees to execute an instrument subordinating the Note in accordance with the terms hereof to the aforementioned indebtedness not to exceed $2,000,000 to an institutional lender." In compliance with the last sentence plaintiff later sent a letter describing itself "as the subordinating instrument" but which did not further define the nature of the subordination.

inure to the benefit of the guarantor. It must, however, be discussed in order to reveal its limited effect.

It has been noted that there are two quite different basic types of subordination clauses (Calligar, Subordination Agreements, 70 Yale L. J. 376, 377–382 [1961]). An '' inchoate '' subordination gives the senior creditor priority over the subordinated creditor only with respect to the debtor's assets, and becomes operative only when a voluntary or involuntary distribution of the debtor's assets is made to creditors. The specific event which makes the subordination operative is to be mentioned in the agreement. The '' complete '' subordination agreement, on the other hand, forbids or limits payments by the debtor on the subordinated debt as long as the senior debt remains unpaid. It has also been noted that no court has yet decided which type of subordination is intended when the parties themselves have failed to distinguish between them (id., pp. 382–383).

If the subordination clause is '' inchoate '' and merely gives priority with respect to the debtor's assets, then prior to the taking of any action with respect to those assets the clause does not prevent the subordinated creditor from reducing his claim against the debtor to a judgment. It would follow that plaintiff would be entitled to summary judgment against the debtor's guarantor. If, on the other hand, the clause is construed as a '' general '' subordination clause, there is no right to payment from the debtor and no action would lie against the debtor, where, as here, the debtor is also in default to the senior creditors.

There are factors which suggest, but do not compel, the conclusion that a '' general '' subordination was intended: the absence of mention of an event that would make the subordination operative (despite a detailed listing of events that could accelerate the obligation on the subordinated note), the apparent reliance on a personal guarantee and absence of reliance on the debtor's assets as security, and the provision reproduced in the margin above, that absent a default in the senior obligation, nothing in the instrument evidencing such senior obligation shall prohibit the debtor from paying the note in accordance with its terms.

Assuming, without deciding therefore, that the subordination was intended to be '' general '', and that no action now lies against the debtor on the subordinated note, it is nevertheless concluded that an action lies against the guarantor and that summary judgment should be granted. However important the construction of the subordination clause may be as between subordinated and senior creditors, its ambiguity affords no

defense to an action brought by a creditor on the personal guarantee of the individual defendant. Although plaintiff's rights with respect to a senior creditor may be uncertain, this very uncertainty demonstrates the importance to plaintiff of Straile's personal guarantee. In that guarantee, which is itself free from ambiguity, Straile unconditionally undertook that the note would be promptly paid regardless of the enforcibility of the note by plaintiff against the corporate defendant, Straile's principal.

Consequently, even if one assume that the subordination agreement prevents suit by the junior creditor against the debtor while it is in default to the senior creditor, it does not follow that the guarantor is similarly immune from suit. It is hornbook law that a release of the principal debtor with the surety's consent, does not discharge the surety (Simpson, Suretyship, § 63, p. 301; Stearns, Law of Suretyship [5th ed.], § 6.45, p. 182; Restatement, Security, § 122, subd. [a]). Indeed, even without such consent, if the creditor reserves his rights against the surety, the surety is not discharged (Simpson, *op. cit.* § 64, p. 302; Restatement, Security, § 122, subd. [b]; General Obligations Law, § 15–104; *Brill* v. *Brandt,* 289 N. Y. 581). In the present case what was given was not even an absolute re'ease, but at most an agreement not to sue the principal as long as it was in default to the senior creditor.

That the individual defendant Robert Straile consented to whatever release (or agreement not to sue) was given in the exclusive purveyor agreement cannot be doubted. His guarantee expressly refers to the agreement, and was executed as part of the same transaction. Under such circumstances he must have been aware that future events might change the obligation of his principal, and he is deemed to have assented to whatever is contemplated by the agreement (*Smith* v. *Molleson,* 148 N. Y. 241, 250).

Defendant Straile's undertaking was not conditioned in any way on the liability of the debtor corporation on the note. His undertaking was that the note would be paid at maturity "irre- spective of the   *   *   *   enforceability thereof". It follows that the subordination clause affords no defense to the guarantor on the principal debtor's default.

Accordingly, the order appealed from denying plaintiff's motion for summary judgment should be reversed, on the law, and summary judgment for the amount remaining due on the note should be granted, with costs to plaintiff-appellant. Settle order.

BOTEIN, P. J., BREITEL, McNALLY, EAGER and STEUER, JJ., concur.

Order, entered on January 18, 1965, unanimously reversed, on the law, with $30 costs and disbursements to appellant and the motion for summary judgment granted, with $10 costs. Settle order on notice.

