■ NATIONAL BANK OF NORTH AMERICA, Appellant, v. LOUIS SOBEL, Respondent, et al., Defendant.—Appeal dismissed, without costs, insofar as it is from (1) an order of the Supreme Court, Nassau County, dated June 11,

1968, which denied plaintiff's motion for summary judgment against defendant Sobel, and (2) from so much of an order of said court dated July 18, 1968 as granted plaintiff's motion for reargument. The first order was superseded by the second (*Graffeo* v. *Graffeo*, 7 A D 2d 741); and plaintiff is not aggrieved from the provision in the second order granting reargument. Order dated July 10, 1968 reversed insofar as it adheres to the original determination, on the law, with $10 costs and disbursements, and plaintiff's said motion for summary judgment granted, provided however that the case is remitted to the court below for an assessment of damages with respect to the amount of credit to which defendant Sobel is entitled as a result of plaintiff's sale of the collateral security. Defendant Sobel signed a guarantee agreement whereby he individually guaranteed a promissory note which he, as president of Metro Bake Shop, Inc., had executed, payable to plaintiff's predecessor, Meadow Brook National Bank. Thereafter, Metro sold its bakery business to Hardoon Bakery, Inc., with notice to the bank, and on July 26, 1967 defendant Hardoon executed a guarantee agreement similar to Sobel's whereby he guaranteed to the bank the payment of the obligations of Metro and Sobel. After some payments the note was defaulted and plaintiff brought this action against Sobel and Hardoon, as guarantors, for the balance due and owing after public sale of the collateral security pursuant to the terms of the note. Photocopies of the note and the two guarantee agreements were annexed to the complaint. Sobel's answer consisted of denials and the affirmative defense that he had been released from liability as surety in that on July 26, 1967 the bank and Hardoon had, without the knowledge and consent of himself or Metro, entered into an agreement changing the terms of the note, modifying the payments provided for therein, and extending the time to make such payments (cf. *Becker* v. *Faber*, 280 N. Y. 146). Sobel opposed plaintiff's motion for summary judgment without offering evidentiary proof of his affirmative defense (cf. *Shapiro* v. *Health Ins. Plan of Greater N. Y.*, 7 N Y 2d 56, 63). An officer of plaintiff denied that any such modification agreement had been made on July 26, 1967, stating that the only transaction on that date was Hardoon's execution of his guarantee agreement. In our opinion this is insufficient to create a triable issue of fact as to whether the terms of the note were modified by agreement with Hardoon on the date in question. Even if it be assumed *arguendo* that the papers do present such a triable issue, the documentary evidence establishes that Sobel, by the terms of his guarantee agreement, expressly authorized the bank, without notice to him or Metro, " to modify or otherwise change any terms of all or any part of the Liabilities and/or the Collateral, [and] to grant any extension or renewal thereof and any other indulgence with respect thereto ". We find this language is sufficiently broad to include the modification alleged by Sobel; and his affirmative defense therefore is insufficient. Since plaintiff concedes there may be some question as to the amount of credit to which Sobel is entitled as a result of the public sale of the collateral security, the case is remitted for assessment of damages. Christ, Acting P. J., Brennan, Benjamin, Munder and Martuscello, JJ., concur.