**Jule GRANDONICO, Plaintiff,**

v.

**CONSORTIUM COMMUNICATIONS INTERNATIONAL, INC., Defendant.**

**No. 82 Civ. 0267(MEL).**

United States District Court,
S.D. New York.

July 1, 1983.

Beldock, Levine & Hoffman, New York City, for plaintiff; Jon B. Levison, New York City, of counsel.

Schulman, Berlin & Davis, P.C., New York City, for defendant; William J. Davis, Alice B. Newman, New York City, of counsel.

LASKER, District Judge.

Jule Grandonico brings this action for breach of a written contract to pay commissions. He moves for summary judgment pursuant to Fed.R.Civ.Pr. 56, contending that there are no genuine issues of fact as to the interpretation of the contract and as to whether it has been breached.

The following facts are undisputed. On June 11, 1979, Grandonico entered into a written contract with Consortium Communications International, Inc. ("CCI") to work as an independent contractor selling CCI's services to third parties in return for commissions at a specified rate. The contract term was one year, subject to automatic renewal unless either party terminated the agreement in writing within thirty days prior to the end of the annual term. The contract provided that it could not be altered, amended or terminated except in a writing signed by both parties.

In July, 1980, the parties discussed the possibility of changing Grandonico's relationship with CCI. Whether those discussions culminated in an agreement is disputed. In any event, Grandonico continued to perform the same sales services for CCI until early December, 1981, at which time he was discharged because, according to CCI, he threatened CCI president Yaakov Elkon that if he were not given a written employment agreement, he would advise potential CCI investors that CCI was engaged in certain alleged, unspecified improper activities. Grandonico denies having made the alleged threat, and asserts that it was a fabrication made in order to justify his discharge.

CCI contends that summary judgment is inappropriate because there are genuine is-

sues of fact as to: (a) whether the parties entered into an oral agreement superseding the written contract in July, 1980; (b) whether Grandonico is estopped from enforcing the written contract on the basis of the oral agreement; (c) how the written contract should be interpreted, assuming that it is binding; and (d) the facts concerning the alleged extortion.[1] It is not disputed that CCI owes Grandonico reimbursement for expenses incurred by Grandonico in connection with CCI sales; however, CCI asserts that judgment should not be entered with respect to that claim because CCI may be entitled to a greater sum in connection with its counterclaims.

### A. The Oral Agreement

CCI contends that the written contract is of no force and effect because it was superseded by an oral agreement entered in July, 1980. In its Answer to the Complaint, CCI described the oral agreement as follows:

"In July, 1980, in consideration of the defendant paying plaintiff the sum of $50,000 per year and 1% of all sales generated by the plaintiff, and in further consideration of the availability of a corporate title to the plaintiff, the plaintiff abandoned and waived the June 11, 1979 agreement . . ."

(Answer, ¶ 30). The oral agreement is subsequently described in the Answer as being a "month-to-month arrangement." (Answer, ¶ 46).

Grandonico has a different view of what transpired in July, 1980. In his affidavit, he recounts discussions with the president of the company, Yaakov Elkon, and one of its principal investors, leading to Grandonico's proposing a five-year employment contract at $60,000 per year plus two percent commission and "some form of equity participation." Grandonico asserts that he "made it clear" to Elkon that he "would not give up the [written] agreement [of June,

---

**1.** CCI has not made any reference in its Rule 3(g) Statement of Material Facts to its counterclaim for fraud and its defense of laches, nor are those contentions discussed in its brief. Under the circumstances, we deem those claims to have been withdrawn. In particular, with respect to laches, we note that the complaint was filed 35 days after Grandonico was discharged.

1979] unless [he] was given a five-year *written* employment contract." (Affidavit of Jule Grandonico, ¶ 12). According to Grandonico, Elkon informed him sometime later that CCI agreed to all of his terms, except for the proposed salary and commission rate, which they suggested lowering to $4,000 a month and one percent commission. Grandonico states that at that point, he "accepted." (*Id.*, ¶ 13). He asserts that he continually requested that the company put the contract in writing, and was told that it would be done. (*Id.* ¶ 23).

Thus, under Grandonico's view of the facts, the oral agreement was explicitly conditional on the execution of a written contract. No written agreement ever having been executed, the proposed new contract never went into effect, and, accordingly, Grandonico brings this action to enforce his rights under the June, 1979 written contract, which concededly has never been terminated in accordance with its terms by written notice of termination within thirty days from the conclusion of the annual term.

In support of its assertion that an oral contract was in fact entered between the parties for an at-will employment agreement, CCI rests on its pleadings. In opposition to Grandonico's summary judgment motion, CCI has submitted a volume of paper, including an affidavit by Elkon and excerpts of the deposition transcripts of Elkon, the former president of the company, the chairman of the board of the company and Sam Klein, one of the principal investors. We have reviewed carefully the entire submission. At no point does any of these individuals state that he entered into an oral contract with Grandonico in July, 1980.[2]

Instead of submitting proof in support of its claim, CCI relies on its characterization of Grandonico's "admissions" and his con-duct. Elkon asserts that Grandonico "admitted" entering into an oral employment agreement "terminable at will." (Elkon Affidavit, ¶ 13). Elkon informs us that we will find those "admissions" in paragraph 13 of Grandonico's Affidavit and pages 211–234 of his deposition. However, in paragraph 13 of his Affidavit, Grandonico, in direct contradiction, states that he had been told that CCI agreed to *all* of Grandonico's terms, which, as spelled out in paragraph 12, included a written contract for a five-year term. Pages 211–234 of the deposition are to similar effect, see especially pages 218 and 223.

■ Nor does Grandonico's conduct support CCI's allegation of an oral contract. Under New York law, when a written contract provides that it cannot be altered except in writing, it cannot be altered except in writing, subject to the narrow exception that if the parties agree orally to alter the contract, the oral agreement may be proven by partial performance of the oral agreement, but only if the performance is "unequivocally referable to the oral agreement to modify." *Rose v. Spa Realty Associates,* 42 N.Y.2d 338, 346, 397 N.Y.S.2d 922, 927, 366 N.E.2d 1279, 1284 (1977) (Breitel, J.).

■ Under this standard, the conduct which CCI seeks to admit is not probative for two reasons. First, while partial performance may be used to prove an oral agreement where it is alleged that an oral agreement was made, there must be an oral *agreement* to alter the written contract: otherwise, the fact that the parties acted in a manner inconsistent with the terms of the written contract is not sufficient to alter those terms in the face of a contract provision that all alterations must be in writing. *See Gallo v. Swan Optical Corp.,* 79 A.D.2d 697, 434 N.Y.S.2d 275 (2d Dept.1980). Here, there is no evidence that an oral agreement

---

**2.** Attached to *Grandonico's* papers are transcripts from the deposition of Sam Klein, who states that he disfavored a written contract for Grandonico, and would recommend against it. (Affidavit of Sam Klein at 36–37). However, CCI does not rely on Sam Klein's commitment to recommend or not recommend certain terms as constituting the actual making of the alleged oral contract. Moreover, Elkon appeared to have been under the impression that there was no contract between Grandonico and CCI at all, oral or otherwise. (Elkon Deposition at 173: "I knew he [Grandonico] did not have a contract with CCI").

was ever entered: Grandonico asserts that the agreement was conditional on a written execution which never occurred, and, in response, CCI has rested on its pleadings.

Second, the conduct on which CCI relies —Grandonico's signing of checks, his use of the title Vice President, and his acceptance, beginning in October, 1980, of commission checks—is not "unequivocally referable" to the alleged oral agreement. At Elkon's deposition, he explained Grandonico's signing of checks, not by reference to any aspect of the alleged oral agreement, but as a convenience to the company: "We had to have an emergency signature situation when I was away to allow coverage for accounts payable, and I do presume ... that those checks that Mr. Grandonico signed for himself were at a time that I was absent from the New York office." (Elkon Deposition at 97). Similarly, there is testimony that the company "acquiesced" in Grandonico's assumption of the title vice president in order to enhance his salesmanship. (Sam Klein Deposition at 46–47, 84). The payment of what defendants characterize as commission checks beginning in October, 1980 does not appear to be referable to either the written contract or the alleged oral agreement: neither provides for payments of any kind to begin in October, 1980, and the record does not reflect the occurrence of any event in October, 1980 which would have triggered any other provision in either agreement. In any case, on the record before us, the commission checks commencing in October, 1980[3] were not "unequivocally referable" to the alleged oral agreement.

In summary, Grandonico has submitted evidence contesting the existence of the alleged July, 1980 oral agreement. CCI has failed to put in evidence in response. Summary judgment may accordingly be entered with respect to any claim or defense based upon the alleged July, 1980 oral agreement.

**B.** *Estoppel*

CCI contends that Grandonico is estopped from denying the existence of the July, 1980 oral agreement because "CCI clearly changed its position when, in July of 1980 it hired Mr. Grandonico under the oral agreement rather than terminate him at that time." (Elkon Affidavit, ¶ 19).

Putting aside the fact that CCI has failed to submit proof of the existence of an oral agreement, the argument that it relied to its detriment on the agreement in refraining from terminating Grandonico in July, 1980 is unpersuasive for several reasons. First, CCI did not have the option of terminating Grandonico in July, 1980: the contract provided that it could be terminated only in the period 30 days prior to the conclusion of the annual period, which expired June 11, 1980. If, in July 1980, CCI had wished to discharge Grandonico, it would have had to wait until May 11, 1981, at the earliest, to do so. Moreover, even were we to assume that CCI suffered some detriment in retaining Grandonico after July, 1980, nothing in the record indicates that the detriment rises to the level of "substantial injury" or "irremediable change in position" necessary to support a finding of promissory estoppel. *Philo Smith & Co., Inc. v. USLife Corp.,* 554 F.2d 34, 35, 36 (2d Cir.1977).

Accordingly, we conclude that CCI has failed to establish the existence of any genuine issues of fact with respect to its defense of estoppel.

**C.** *Interpretation of the Written Contract*

Having found that the written contract is binding, it becomes necessary to interpret it. The parties disagree as to whether parol evidence is admissible in interpreting the provision concerning the rate of commissions payable to Grandonico under the contract.

---

**3.** The record does not indicate how many checks were received, how often they were disbursed or how they were calculated.

The disputed clause provides that Grandonico shall receive a specified percentage of CCI billings "on all traffic." Grandonico argues that the provision applies to all CCI billings, regardless of whether the customer was procured by him or by one of the other salespersons. CCI contends that the provision is meant to entitle Grandonico to commissions only on the sales that he brought into the company himself.

The meaning of the provision in dispute is not "wholly unambiguous," *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975), and accordingly, the admission of parol evidence to aid in the interpretation of the contract is proper. *See also Schering Corp. v. Home Ins. Co.,* Nos. 83–7056; 83–7102, slip op. at 4683, 712 F.2d 4, 9 (2d Cir., June 21, 1983). Both of the signatories have set forth their interpretations of the clause. (Grandonico Affidavit, ¶ 30, Deposition of Michael Klein at 44.) The facts submitted by Grandonico in support of his interpretation of the contract—that it was drafted by CCI and signed by him without alteration—may be relevant to the finder of fact. However, because the provision is "not wholly unambiguous" and the parties dispute its interpretation, it is the task of the jury to draw the inferences from the relevant facts.

## D. *The Extortion Counterclaim*

■ CCI alleges that Grandonico threatened Elkon that unless CCI provided him with a written employment agreement "with substantial monetary terms" he would advise prospective CCI investors of "improper activities" by CCI. (Answer, ¶ 36). Elkon describes the alleged threat as being quite vague: he is unsure whether Grandonico said that he would inform the potential investors of "certain things" or "irregularities" or something else of that nature. (Elkon Deposition at 170–71). Grandonico denies having made any threat, and describes the allegation as a fabrica-

tion, made for the purpose of justifying his dismissal. (Grandonico Affidavit, ¶ 26).

CCI does not contend that it would have been illegal for Grandonico to have informed prospective CCI investors that the company had engaged in alleged improprieties or illegalities.[4] If it would not have been illegal for Grandonico to make the alleged disclosure to the investors, his threat to do so is not actionable: "It is not duress to threaten to do what one has a legal right to do." *Bluestone v. Jones,* 233 N.Y.S.2d 146, 149 (Sup.Ct. Kings Co.1962). *Accord: 30 East End v. World Steel Products Corp.,* 110 N.Y.S.2d 754, 757 (Sup.Ct., Bronx Co.1952); *Barrett v. Independent Order of Foresters,* 625 F.2d 73, 74 (5th Cir. 1980). *See also Papert v. Conway,* 107 N.Y. S.2d 638 (Sup.Ct.N.Y.Co.1951), *aff'd,* 279 A.D.2d 892, 111 N.Y.S.2d 605 (1952), ("it is well settled that threats of civil proceedings or resort to one's legal remedies do not constitute duress.... This is particularly true where, as here, there is no allegation that the charges contemplated were unfounded or baseless in fact"); *United States ex rel. Smith v. Heil,* 308 F.Supp. 1063, 1067 (E.D.Pa.1970).

Accordingly, the counterclaim for "extortion" is dismissed for failure to state a claim.

## E. *Grandonico's Claim for Expenses*

CCI does not dispute Grandonico's claim that he is entitled to be reimbursed for his expenses incurred in connection with CCI sales. (CCI Memorandum of Law at 12). CCI's counterclaim having been dismissed and there being no dispute as to CCI's liability or the amount due, summary judgment on the claim is appropriate.

### *Conclusion*

Grandonico's motion for summary judgment is granted as to (1) all claims or defenses arising out of the alleged oral agreement of July, 1980; (2) the counterclaim for extortion; and (3) the claim for

---

**4.** In fact, immediately subsequent to the date of the alleged threat, CCI altered its private placement memorandum to disclose the possibility that CCI had engaged in illegal activity. (See December 28, 1981 Private Placement Memorandum, Ex. 11 to Affidavit of Yaakov Elkon, at 25).

expenses. There being material issues of fact as to the interpretation of the written contract, summary judgment is denied as to claims arising from it.

It is so ordered.