## GE CAPITAL MORTGAGE SERVICES, INC.

v.

## PINNACLE MORTGAGE INVESTMENT CORP., Sandra Stevens–Miller, and Albert A. Miller, III.

Civ. A. No. 94–7031.

United States District Court,
E.D. Pennsylvania.

May 9, 1995.

---

Norman E. Greenspan, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for plaintiff GE Capital Mortgage Services, Inc.

Dante Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for defendant Pinnacle Mortgage Investment Corporation.

Dante Mattioni, John Mattioni, Stephen M. Martin, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for defendants Sandra Stevens–Miller, Albert A. Miller.

### MEMORANDUM

CAHN, Chief Judge.

Plaintiff GE Capital Mortgage Services, Inc. ("GE Capital") brought this action against the Pinnacle Mortgage Investment Corporation ("Pinnacle"), Sandra Stevens–Miller, and Albert A, Miller, III (collectively, the "defendants"). GE Capital claims that the defendants have failed to make payments as required by the parties' loan agreement. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Currently before the court is GE Capital's motion for summary judgment on its breach of guaranty claim.

### I. Background

Pinnacle was a licensed mortgage broker with offices in Pennsylvania and New Jersey. Sandra Stevens–Miller and Albert A. Miller, III (the "Miller Defendants" or "Guarantors") are Pinnacle's only shareholders.

As a mortgage broker, Pinnacle loaned money to home buyers. Pinnacle obtained the money which it lent to these home buyers by borrowing from certain creditors known as "warehouse lenders." These warehouse loans were secured by the mortgage notes and mortgages which Pinnacle received from its customers.

On July 14, 1993, Pinnacle, as borrower, Cooper River Funding Inc. ("Cooper"), as lender, and GE Capital, as agent, executed a Warehouse Credit Agreement ("Credit Agreement"), and Pinnacle and GE Capital executed a Warehouse Security Agreement (the "Security Agreement") (collectively, the "Credit Documents"). Pursuant to the Credit Documents, Cooper extended a secured Line of Credit for $10 million to Pinnacle. This Line of Credit was subsequently increased to $15 million.

To secure the advances made on the Line of Credit, Pinnacle granted GE Capital a continuing security interest of first priority in all of the collateral as defined in the Security Agreement, including the mortgage loans and proceeds. Moreover, Pinnacle agreed to accept its customers' mortgage payments as GE Capital's agent, and to immediately transfer these funds to GE Capital. At all times, the outstanding balance of the Line of Credit was to be secured by eligible mortgage loans.

In addition to being secured by Pinnacle's mortgages, Pinnacle's obligations were secured by the Miller Defendants' personal guaranties (the "Guaranties"). The Guaranties provide in pertinent part:

1. The Guarantor hereby absolutely and unconditionally guarantees to Lender its successors and assigns, and its agent, GE Capital Mortgage Services, Inc. ("Agent") the prompt and unconditional payment of (i) the total amount of principal advanced from time to time under the Credit Agreement, (ii) all interest, costs, charges, expenses and reasonable attorney's fees payable in connection with the Credit Agreement as the same shall become due and payable (whether as stated maturity, by acceleration or otherwise) and (iii) all other Obligations of any kind owing from time to time by the Borrower under the terms of any Credit Document.

\* \* \* \* \* \*

4. The liability of the Guarantor under this Agreement is absolute and unconditional, without regard to the liability of any other person, and shall not in any manner be affected by reason of any action taken or not taken by the Lender or Agent, which action or inaction is herein consented and agreed to, nor by the partial or complete unenforceability or invalidity of any other guaranty or surety agreement, pledge, assignment or other security for any of the Obligations. No delay in making demand on the Guarantor for satisfaction of Guarantor's liability hereunder shall prejudice the Lender's and Agent's right to enforce such satisfaction. All of the Lender's and Agent's rights and remedies shall be cumulative and any failure of

Lender or Agent to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time, and from time to time, thereafter.

5. The Guarantor hereby waives (i) all defenses to, and all setoffs, counterclaims and claims or recoupment against, the Obligations that may at any time be available to the Borrower and (ii) all other defenses under any applicable law that would, but for this clause (ii), be available to the Guarantor as a defense against or a reduction or limitation of its liabilities and obligations hereunder. This Guaranty is a primary obligation of the Guarantor.

(See Affidavit of James C. Zollo, Exhibit 5 and 6, ¶¶ 1, 4, and 5).

Cooper assigned all of its right, title and interest in the Line of Credit under the Credit Documents to GE Capital on September 13, 1994.

GE Capital contends that, as early as May 2, 1994, Pinnacle misrepresented the number of eligible mortgage loans securing the Line of Credit, and that only $2 million of the $10.6 million loaned to Pinnacle was secured by eligible mortgage loans. Furthermore, GE Capital alleges that many of the mortgage loans held by Pinnacle were sold, and that the proceeds of such sales were not forwarded to GE Capital as required by the Credit Documents. GE Capital claims, therefore, that Pinnacle breached the terms of the Credit Agreement, entitling GE Capital to immediate payment of all outstanding funds under the Credit Agreement, plus interest.

Defendants, however, contend that GE Capital was never deceived with regard to the status of its loan, and that, by the end of September 1994, GE Capital had full knowledge of Pinnacle's financial affairs. In support of this contention, defendants allege that, in September of 1994, Sandra Stevens–Miller informed Jack Welch, CEO of GE Capital, that Pinnacle was in financial trouble and would be unable to satisfy its obligations under the Credit Agreement. According to defendants, GE Capital expressed a willingness to restructure the debt, and began ne-

gotiations with the defendants. As part of these negotiations, GE Capital demanded, and received, the right to conduct a thorough due diligence of the defendants.

More importantly, defendants contend that the parties orally agreed to a new contract (the "Oral Agreement") which superseded the Credit Agreement. Defendants have submitted two documents, entitled the Restated Credit and Security Agreement (the "Restructuring Agreement") and Preferred Stock Purchase Agreement (the "Stock Purchase Agreement"), to support their contention. Defendants claim that these unsigned documents were drafted by counsel for GE Capital, and contain all terms upon which the parties orally agreed.

GE Capital has filed a five count complaint against the defendants. Because an involuntary bankruptcy petition has been filed against Pinnacle, the case against Pinnacle automatically has been stayed. *See* 11 U.S.C. § 362. Currently before the court is GE Capital's motion for summary judgment and immediate entry of final judgment with regard to Count Two of its Complaint, a breach of Guaranty claim against the Miller Defendants (the "Guaranty Claim"). In ruling on this motion for summary judgment, the court will apply the now-familiar summary judgment standard. *See Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1308 (3d Cir.1995).

## II. The Guaranty Claim

■ The Guaranties executed by the Miller Defendants provide that they are to be governed by New York law, without regard to traditional choice of law principles. Such contractual choice of law provisions are generally enforceable. *Kruzits v. Okuma Machine Tool,* 40 F.3d 52, 55 (3d Cir.1994); *Cottman Transmission Systems v. Melody,* 869 F.Supp. 1180, 1184 (E.D.Pa.1994); *Smith v. Commonwealth National Bank,* 384 Pa.Super. 65, 557 A.2d 775, 777 (1989), *appeal denied,* 524 Pa. 610, 569 A.2d 1369 (1990). Accordingly, the court will look to the law of New York in determining the Miller Defendants' obligations under the Guaranties.

■ In the Guaranties, the Miller Defendants "absolutely and unconditionally" guaranteed to Cooper, and Cooper's assignee GE Capital, the "prompt and unconditional payment" of all monies due under the Credit Agreement. The Guaranties specifically provide for the payment of all principal, "interest, costs, charges, expenses and reasonable attorney's fees."

In addition, the Miller Defendants have waived "(i) all defenses to, and all setoffs, counterclaims and claims on recoupment against, the Obligations that may at any time be available to [Pinnacle] and (ii) all other defenses under any applicable law that would, but for this clause (ii), be available to the Guarantor as a defense or a reduction or limitation of its liabilities and obligations hereunder."

Under New York law, GE Capital's right to enforce the Guaranties is clear. For instance, in *First New York Bank for Business v. DeMarco,* 130 B.R. 650 (S.D.N.Y.1991) the court was confronted with a guaranty which provided:

> [The Guarantors] irrevocably, absolutely and unconditionally guarantee to the Bank payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Bank, together with all interest thereon and all attorney's fees, costs and expenses of collection incurred by the Bank in enforcing any of such liabilities.

*Id.* at 653. In addition, the guaranty provided that no defense available to the guarantors would "affect, impair or be a defense to [the] guaranty," and that the "guaranty is an absolute and unconditional primary obligation of the [guarantors]." *Id.*

After rejecting the guarantor's claim that the guaranty was unconscionable, the court stated:

> Absolute and unconditional guaranties such as those executed by defendants are consistently upheld by New York courts. Indeed, unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims.... These guaranties, typical of those executed by banks in the course of commercial loan transactions, are

·enforceable and do not violate public policy.

*Id.* at 654 (citations omitted). *See also Mikor Realty and Development Corporation v. Fleet Bank,* 210 A.D.2d 157, 620 N.Y.S.2d 354 (1994) (dismissing guarantor's complaint against bank in light of unconditional guaranty); *Socia v. Trovato,* 197 A.D.2d 916, 602 N.Y.S.2d 270 (1993) (disregarding guarantor's affirmative defenses and setoffs pursuant to unconditional guaranty); *Scarsdale National Bank and Trust Company v. S.E.W. Productions, Inc.,* 151 A.D.2d 657, 542 N.Y.S.2d 717, 718 (1989) ("where ... the language of the instrument of guarantee expressly and unambiguously creates an unconditional guarantee and contains no limiting provisions, the guarantor is precluded from claiming that she intended the instrument to have only limited applicability").

Based on the foregoing precedent, the court concludes that the Guaranty is enforceable as written. Therefore, the court concludes that the Miller Defendants are obligated to answer for Pinnacle's failure to pay GE Capital. Therefore, the narrow issue before the court is whether the alleged Oral Agreement validly superseded the Credit Agreement. If the court finds that the Credit Agreement has not been superseded, then the Miller Defendants would be immediately liable for all outstanding money due under that agreement. However, if the court finds that the Credit Agreement has been superseded by the Oral Agreement, then the Miller Defendants would be liable only if Pinnacle has failed to make payments as required by the Oral Agreement. Because the Miller Defendants claim that GE Capital has failed to satisfy its obligations under the Oral Agreement, however, it appears that the Miller Defendants may be absolved of all liability should the Oral Agreement be given effect. GE Capital has offered several arguments why the court should disregard the alleged Oral Agreement. These claims will be addressed in turn.

A. *The Absolute Nature of the Guaranties*

■ GE Capital contends that the Miller Defendants' Guaranties obligate them to answer for the amount owing under the Credit Agreement. In making this argument, GE Capital claims that the "absolute" and "unconditional" nature of the Guaranties allows it to proceed against the Miller Defendants without establishing that Pinnacle is currently in default under the Credit Agreement. Therefore, GE Capital contends that, despite the Miller Defendants' argument that the Oral Agreement canceled Pinnacle's default, this court should disregard the alleged Oral Agreement. The court disagrees.

Under New York law, a guaranty is defined as a:

collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some contract or duty in case of the default of another person, who in the first instance is liable for such payment or performance; a collateral promise or undertaking to pay a debt owing by a third person in case the latter does not pay.

*Aquavella v. Harvey,* 69 Misc.2d 606, 330 N.Y.S.2d 560, 563 (N.Y.Sup.Ct.) (quoting 38 C.J.S. Guaranty § 1), *aff'd,* 40 A.D.2d 940, 337 N.Y.S.2d 611 (1972). The Guaranty at issue provides that it is absolute and unconditional. Therefore, the Guaranty constitutes a "guaranty of payment" whereby the Miller defendants bound themselves to pay immediately upon Pinnacle's default without GE Capital's having to make all attempts to collect payment from Pinnacle. *General Phoenix Corporation v. Cabot,* 300 N.Y. 87, 89 N.E.2d 238, 240 (1949).

■ However, despite the fact that the Guaranty is absolute, the court disagrees that the Miller Defendants are liable irrespective of whether Pinnacle is currently in default under some underlying obligation. *See* 38 Am.Jur.2d Guaranty § 21 (1968) ("a guaranty is classified as absolute even though the liability of the guarantor is conditioned upon the default of the principal debtor"); *Id.* at § 22 ("guaranty of payment binds the guarantor to pay the debt at maturity in the event the money has not been paid by the principal debtor; and upon default by the debtor, the obligation of the guarantor becomes fixed.") As the Court of Appeals for the Second Circuit has noted, "the general rule is that 'the guarantor is not liable

unless the principal is bound'" *Pro–Specialties, Inc. v. Thomas Funding Corporation*, 812 F.2d 797, 799 (2d Cir.1987) (quoting *Walcutt v. Clevite Corporation*, 13 N.Y.2d 48, 241 N.Y.S.2d 834, 838, 191 N.E.2d 894, 897 (1963)). *See also Midwest Corporation v. Global Cable, Inc.*, 688 F.Supp. 872, 875 (S.D.N.Y.1988) ("the guarantor cannot be liable for an amount greater than that for which the principal is liable"); *Aquavella*, 330 N.Y.S.2d at 563 ("of course, before the [absolute] guarantor is obligated to pay, the principal debtor must be in default").[1] Accordingly, the court concludes that the Miller Defendants' claim of oral modification to the Credit Agreement is sufficient to withstand GE Capital's motion for summary judgment.

New York precedent is consistent with this court's conclusion. For instance, in *North Fork Bank & Trust Company v. Bernstein & Gershman*, 201 A.D.2d 472, 607 N.Y.S.2d 135 (1994), the court rejected the guarantor's claim that the creditor orally agreed to accept certain collateral in lieu of taking any action on the underlying debt. However, the court did not rely upon the absolute guaranty to support its holding. Instead, the court held that the alleged oral modification of the underlying loan was unenforceable under New York's Statute of Frauds.[2] *See also Hudson Valley Paper Company v. La Belle*, 173 A.D.2d 1098, 571 N.Y.S.2d 107, 109 (1991) (absolute guarantor's allegation of oral modi-

fication to the underlying loan disregarded because "the Statute of Frauds prohibits proof of any collateral agreement"); *Bank Leumi Trust Company v. D'Evori International, Inc.*, 163 A.D.2d 26, 558 N.Y.S.2d 909 (1990) (principal debtor's and absolute guarantor's allegations of oral modification to the underlying loan barred by New York Statute of Frauds).

In *Canterbury Realty & Equipment Corporation v. Poughkeepsie Savings Bank*, 135 A.D.2d 102, 524 N.Y.S.2d 531 (1988), the court was confronted with a situation similar to the one at bar. In *Canterbury*, the guaranty was unconditional, and provided that "no invalidity, irregularity, or unenforceability of all or any part of the liabilities ... guaranteed ... [would] affect, impair or be a defense to [the] guaranty." *Id.* 524 N.Y.S.2d at 532. Despite this sweeping waiver, the court allowed the guarantor to assert that the underlying loan was orally modified. The court explained that "the guarantors only obligated themselves unconditionally to make payments on [the underlying] liabilities 'when due.'" *Id.* at 534. Therefore, because it was not clear whether parties orally modified the underlying loan, the court held that the trial court "was correct in finding material issues of fact as to existence of a valid, enforceable modification of the original debt ..." *Id.*[3]

1. In addition, the requirement that a creditor establish a current default on the part of the principal debtor is an element of a prima facie guaranty claim. To validly state a guaranty claim, a creditor must establish: the existence of notes, guaranties, and a default in payment. *European American Bank v. Syosset Autorama*, 204 A.D.2d 266, 611 N.Y.S.2d 585, 586 (1994). *Accord North Fork Bank & Trust Company v. Bernstein & Gershman*, 201 A.D.2d 472, 607 N.Y.S.2d 135, 136 (1994). *See also United States v. Krieger*, 773 F.Supp. 580, 583 (S.D.N.Y.1991) ("an obligee as plaintiff in an action against a guarantor has the burden of proof on all essential elements of the cause of action which he has alleged, including the execution and existence of the contract on which he sues, and that it is supported by consideration") (quoting 63 N.Y.Jur.2d § 372 at 492 (1987 & Supp.1990)).

2. Because the parties allegedly have stipulated that the interpretation of the Oral Agreement is a matter of Pennsylvania law, the *North Fork Bank* court's holding with regard to the New York Statute of Frauds does not bind this court's con-

clusion with regard to the enforceability of the Oral Agreement. *See N.Y. General Obligations Law* § 15–301[1] (a written agreement expressly stating that it can be modified only in writing cannot be modified orally).

3. The cases offered by GE Capital on this point can be distinguished. These cases, *Fidelity Union Trust Company v. Robert J. Ball Sales, Inc.*, 99 A.D.2d 436, 470 N.Y.S.2d 613 (1984); *American Bank & Trust Company v. Koplik*, 87 A.D.2d 351, 451 N.Y.S.2d 426 (1982); and *National Bank of North America v. Sobel*, 31 A.D.2d 750, 297 N.Y.S.2d 476, 478 (1969), stand for the proposition that a guarantor who gives prior consent to the modification of the underlying loan will be obligated to answer for the principal debtor's default under the modified loan. *See also Chemical Bank v. Sepler*, 60 N.Y.2d 289, 469 N.Y.S.2d 609, 457 N.E.2d 714 (1983) (continuing guaranty is not limited to loans executed contemporaneously).

The court does not doubt that *Fidelity Union Trust*, *American Bank & Trust*, and *National*

Based upon the forgoing precedent, the court concludes that an absolute guarantor's claim of oral modification to the underlying loan, if otherwise legally enforceable, is effective to withstand a creditor's motion for summary judgment. Although GE Capital correctly claims that the Miller Defendants have waived all defenses to the enforcement of the Guaranties, the court does not consider the Oral Agreement to constitute such a defense. Instead, the Miller Defendants' ability to raise the Oral Agreement "follows from the notion that the guarantor cannot be liable for an amount greater than that for which the principal is liable." *Midwest Corporation*, 688 F.Supp. at 875 (despite waiver of defenses clause, guarantor "may always raise failure of consideration as a defense") (quoting *Walcutt*, 241 N.Y.S.2d at 838). *See also European American Bank & Trust Company v. Boyd*, 131 A.D.2d 629, 516 N.Y.S.2d 714, 715 (1987) (failure of consideration defense not dismissed).[4] The Oral Agreement, if legally effective, erases Pinnacle's default under the Credit Agreement. Accordingly, the court rejects GE Capital's argument that the Oral Agreement is immaterial.

## B. *Contractual Bar to Oral Modification*

GE Capital further contends that the Oral Agreement is unenforceable because the Credit Agreement provides that it cannot be altered orally. In making this argument, GE Capital relies upon Section 11.12 ("Section 11.12") of the Credit Agreement, which provides:

> Neither this Agreement nor any other Credit Document nor any terms hereof or thereof may be changed, waived, discharged or terminated unless such change, waiver, discharge or termination is in writing signed by [Cooper] and [GE Capital].

Affidavit of James C. Zollo, Exhibit No. 1, Section 11.12. Section 11.06 of the Credit Agreement provides that the rights and obligations of the parties under the Credit Agreement are to "be construed in accordance with and be governed by the law of the State of New Jersey." Affidavit of James C. Zollo, Exhibit No. 1, Section 11.06. Therefore, the court has looked to the law of New Jersey in determining whether Section 11.12

---

Bank of North America are correct statements of New York law. However, the issue in this litigation is not whether the Miller Defendants would be bound to answer for Pinnacle's default under a new agreement between Pinnacle and GE Capital, had such an agreement been reached. Based on these cases, and the Miller Defendants' consent to modification of the Credit Agreement, the court would easily conclude that the Miller Defendants are so bound. Instead, GE Capital argues that the Miller Defendants are bound to answer for Pinnacle's default under the Credit Agreement, despite the fact that the default was allegedly canceled by the Oral Agreement. Therefore, these cases are inapposite.

GE Capital also offers *Inland Credit Corporation v. Weiss*, 63 A.D.2d 640, 405 N.Y.S.2d 258 (1978), *appeal dismissed*, 46 N.Y.2d 849, 414 N.Y.S.2d 315, 386 N.E.2d 1336 (1979), in support of its argument that the Miller Defendants are currently required to answer for Pinnacle's default under the Credit Agreement. However, *Inland* held that, where the guarantor so consents, the guarantor may be held to answer for the principal debtor's default despite the fact that the principal has been released by the creditor. *See also Standard Brands Incorporated v. Straile*, 23 A.D.2d 363, 260 N.Y.S.2d 913 (1965) (although junior creditor could not sue debtor due to a "complete" subordination agreement, junior creditor could still sue guarantor for the amount of debtor's default).

*Inland* and *Standard Brands* do not support GE Capital's contention that the Miller Defendants' liability does not turn upon Pinnacle's default. Although the principal debtors in *Inland* and *Standard Brands* were "released," the guarantors were nevertheless liable to the plaintiff because of, and in an amount equal to, the principal's outstanding default. As such, these cases do not undercut the general rule that a guarantor, even an absolute guarantor, is liable to the creditor only for the amount of the principal's default. Accordingly, because the Miller Defendants contend that the Oral Agreement canceled Pinnacle's default under the Credit Agreement, the court finds *Inland* and *Standard Brands* to be distinguishable.

4. As noted previously, Pinnacle's current default under some guaranteed obligation is part of GE Capital's prima facie case. Accordingly, by raising the Oral Agreement, the Miller Defendants are not "defending" against the Guaranties' enforcement. Indeed, the court has previously held that the Guaranties are enforceable as written. Instead, the Oral Agreement goes to the question of whether GE Capital has met its burden of satisfying all elements of its prima facie claim.

of the Credit Agreement effectively precludes oral modification.[5]

In *Estate of Connelly v. United States*, 398 F.Supp. 815 (D.N.J.1975), *aff'd*, 551 F.2d 545 (3d Cir.1977), the United States District Court for the District of New Jersey stated that, under New Jersey law:

> Every agreement, no matter how firmly drawn, may always be modified by another agreement. Even a formal agreement which expressly states that it cannot be modified except in writing, is subject to modification by oral agreement since the requirement for a writing is itself subject to modification.

*Id.* at 827. *See also Headley v. Cavileer*, 82 N.J.L. 635, 82 A. 908, 910 (1912) ("parties who have contracted together have a right ... to supplement [their contract] by another and additional contract, and ... may do so orally in the absence of any statute requiring such contracts to be in writing. Consequently no legal force could or can be given to stipulations [purporting to bar oral modification].... No matter how stringently such clauses may be worded, it is always open for the parties to agree orally or otherwise ... that they shall be partially or entirely disregarded ..."); *Frommeyer v. L & R Construction Company*, 261 F.2d 879, 882 (3d Cir.1958) ("No one doubts that a contract, even a written contract, may be rescinded or modified subsequently. Such modifications may be in writing or oral.") (construing New Jersey law).[6] Accordingly, the court concludes that Section 11.12 of the Credit Agreement, which purports to preclude oral modifications, is ineffective under New Jersey law to prevent the Miller Defendants from claiming that the Credit Agreement has been superseded by the Oral Agreement.

## C. Enforceability of the Oral Agreement under Pennsylvania Law

■■■■ The Miller Defendants contend that the Restructuring Agreement and Stock Purchase Agreement contain all terms upon which the parties orally agreed. Section 12.6 of the Restructuring Agreement and Section 16(a) of the Stock Purchase Agreement provide that Pennsylvania law is to govern their interpretation. Therefore, the court must look to the law of Pennsylvania to determine

---

**5.** The parties' selection of New Jersey as the law to govern the Credit Agreement is quite curious in light of the parties' nearly contemporaneous agreement that New York law govern the Guaranties.

In addition, the court notes that, under New York law, GE Capital's argument that Section 11.12 of the Credit Agreement bars oral modifications of the Credit Agreement would be meritorious. As the United States District Court for the Southern District of New York has noted:

> Under New York law, when a written contract provides that it cannot be altered except in writing, it cannot be altered except in writing, subject to the narrow exception that if the parties agree orally to alter the contract, the oral agreement may be proven by partial performance of the oral agreement, but only if the performance is 'unequivocally referable to the oral agreement to modify.'

*Grandonico v. Consortium Communications International, Inc.*, 566 F.Supp. 1288, 1291 (S.D.N.Y.1983) (quoting *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 397 N.Y.S.2d 922, 927, 366 N.E.2d 1279, 1283 (1977)). *See also Towers Charter & Marine Corporation v. Cadillac Insurance Company*, 894 F.2d 516, 522 (2d Cir.1990); *Christian Dior–New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 40 (2d Cir.1986). In the present case, the Miller defendants have failed to allege any

such partial performance. Accordingly, had the parties not stipulated that New Jersey law governs the interpretation of the Credit Agreement, GE Capital would be entitled to an entry of summary judgment in its favor based upon Section 11.12 of the Credit Agreement.

**6.** *Warner–Lambert Pharmaceutical Company v. Sylk*, 471 F.2d 1137 (3d Cir.1972), relied upon by GE Capital, is beside the point. In *Warner–Lambert*, the court refused to give effect to an oral modification of a guaranty for two reasons: (1) under New Jersey's statute of frauds, 25 N.J.S.A. § 1–5(b), a promise to answer for the debt of another person must be in writing, and (2) the guarantor had not come forward with at least *"some* offer of proof" in support of the guarantor's oral modification theory. *Id.* at 1143 (emphasis in original).

In the present case, there is no question that the written Guaranties satisfy any applicable statute of frauds. Instead, it is the status of the underlying loan, which allegedly has been orally modified, which is at issue. Moreover, the court notes that unlike *Warner–Lambert*, the Miller Defendants have come forward with evidence—the unsigned Restructuring Agreement and Stock Purchase Agreement, allegedly drafted by counsel for GE Capital—in support of their oral modification theory.

whether the alleged Oral Agreement effectively supersedes the Credit Agreement.[7]

■■■■ Although neither party has addressed the legal significance of the Oral Agreement, the court understands the Miller Defendants to be arguing that the Oral Agreement constitutes a novation, as opposed to a executory accord. A novation has the effect of immediately substituting a new contract for an old one. An executory accord, by contrast, only discharges the old contract after the performance of the new agreement. As the Pennsylvania Superior Court has stated, a novation

> is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise in satisfaction of a previously existing claim while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction.

*Nernberg & Laffey v. Patterson*, 411 Pa.Super. 417, 601 A.2d 1237, 1239 (1991) (quoting *Gordon Brothers, Inc. v. Kelley*, 92 Pa.Super. 485 (1927)). The differentiation of a novation and an accord "lies chiefly in the parties' intent concerning their respective effect on any prior agreement of the parties." *Id. Accord Nowicki Construction Company v. Panar Corporation, N.V.*, 342 Pa.Super. 8, 492 A.2d 36 (1985). "The party asserting a novation . . . has the burden of proving that the parties intended to discharge the earlier contract." *Buttonwood Farms, Inc. v. Carson*, 329 Pa.Super. 312, 478 A.2d 484, 486 (1984). Such intention "may be shown by writings, or by words, or by all three." *Id. Accord Surgical Sales Corporation v. Paugh*, No. CIV.A. 92–0591, 1992 WL 70415 (E.D.Pa. March 31, 1992)

■■ Under Pennsylvania law, the party asserting that a new agreement constitutes a novation must establish the following elements: "the displacement and extinction of a valid contract, the substitution for it of a new contract, a sufficient legal consideration for the new contract, and the consent of the parties." *Buttonwood Farms, Inc.*, 478 A.2d at 486. *Accord Owen Healthcare v. Franklin Square Hospital*, 159 B.R. 453, 455 (E.D.Pa.1993). "Whether there is a novation is ordinarily a question of fact." *American Acceptance Corporation v. Scott Housing*

7. The court notes that the parties stipulated that their rights and obligations under the Credit Agreement are to be governed by New Jersey law. This stipulation generally requires this court to look to New Jersey law when determining whether the Credit Agreement is valid and when interpreting its various provisions. However, this stipulation does not require a future novation of the Credit Agreement to comply with New Jersey's Statute of Frauds.

In *Pako Corporation v. Citytrust*, 109 B.R. 368 (D.Minn.1989), the parties stipulated that their original loan agreement was to be governed by Connecticut law. The debtor contended, therefore, that a subsequent oral modification was enforceable under Connecticut's Statute of Frauds. The court, however, disagreed, noting that the choice of law stipulation with regard to the original loan did not bind the court's determination of whether Connecticut law applied to the oral modification. Because the court held that the modified loan was subject to Minnesota's Statute of Frauds, the court held that the modification was unenforceable.

As will be discussed *infra*, the court considers the Oral Agreement to constitute a valid novation under Pennsylvania law for purposes of the present motion. Therefore, the court is bound by the general rule that, for choice of law purposes, a novation is treated like any other contract. Accordingly, a novation is to be governed by the law of the state which results after a traditional choice of law analysis is applied to it. For instance, Restatement (Second) of Conflicts § 212(2), provides:

> A contract is discharged . . . by a subsequent agreement of the parties which is intended to result in such a discharge and would have such an effect under the law which . . . governs the subsequent agreement under the [the traditional contractual choice of law rules].

*See also* 58 Am.Jur.2d, Novation § 48 ("with respect to the law which governs the rights of the parties under a novation agreement, it is the new, rather than the old, relationship which provides the starting point for analysis"); 16 Am. Jur.2d, Conflict of Laws § 94 ("a contract is discharged . . . by a subsequent agreement of the parties, if . . . it would have this effect under the law which governs the subsequent agreement under general contract choice-of-law rules").

The court notes that the parties allegedly agreed that Pennsylvania law is to govern the Restructuring and Stock Purchasing Agreements, despite the fact that they agreed that New Jersey law would govern the Credit Agreement. *See Eldon Industries, Inc. v. Paradies & Company*, 397 F.Supp. 535 (N.D.Ga.1975) (differing state laws may be applied to an original contract and an accord and satisfaction of that contract "where the parties clearly intended such a result"). The court also notes that neither party has argued that the Oral Agreement's legal effect is not to be determined under Pennsylvania law.

*Systems, Inc.,* 630 F.Supp. 70, 75 (E.D.Pa. 1985). Therefore, for purposes of the current motion, the court will assume that the Oral Agreement as alleged by the Miller Defendants constitutes a novation under Pennsylvania law.

■ The defendants contend that the parties orally agreed to all terms of the Restructuring Agreement and the Stock Purchase Agreement, and that this Oral Agreement constitutes an enforceable contract. Because the Restructuring and Stock Purchase Agreements provide for the conversion of Pinnacle debt into Pinnacle preferred stock, however, GE Capital asserts that the Oral Agreement constitutes a "contract for the sale of securities" which must comply with Pennsylvania's statute of frauds. 13 P.S.A. § 8319 ("Section 8319").[8] *See, e.g., Conaway v. 20th Century Corporation,* 491 Pa. 189, 420 A.2d 405, 410–413 (1980) (dismissing complaint where writings offered by plaintiff failed to satisfy Section 8319). The court disagrees.

Neither party has addressed explicitly the issue of whether the alleged Oral Agreement constitutes a "contract for the sale of securities" as contemplated by Section 8319. Although GE Capital contends that the Oral Agreement is unenforceable under Section 8319, it does so only in a conclusory manner. *See* Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendants' Counterclaim, p. 7 (citing *Jennison v. Jennison,* 346 Pa.Super. 47, 499 A.2d 302, 304 (1985) (holding that shares in a closely held corporations constitute Section 8319 "securities")). Similarly, the Miller Defendants simply have submitted affidavits stating that the

stock purchase aspect of the Oral Agreement was insignificant. *See, e.g.,* Affidavit of Albert A. Miller, III, ¶ 10 ("the primary focus of Pinnacle's negotiations with GE Capital was the restructuring of the Warehouse Line of Credit, and *not* the sale of Pinnacle's stock to GE Capital") (emphasis in original). *See also* Affidavit of Sandra Stevens–Miller, ¶ 19).

■ It is beyond dispute that not all contracts whereby securities are transferred from one party to another are "contracts for the sales of securities." In *Baldassarre v. Singer,* 444 Pa. 100, 282 A.2d 262 (1971), for instance, an employer claimed that his oral promise to compensate employees with company stock was unenforceable as a "sale of securities." The court disagreed, stating that "the contract in question is simply not a contract of sale ... This is a contract of employment." *Id.* 282 A.2d at 264–265. *See also Hiller v. Franklin Mint, Inc.,* 485 F.2d 48, 51 (3d Cir.1973) ("transfers of securities pursuant to an employment contract simply are not sales").

In *Great Western Funding, Inc. v. Mendelson,* No. CIV.A. 91–5188, 1992 WL 368128 (E.D.Pa. Dec. 4, 1992), the court was confronted with an issue similar to the one at bar. In *Great Western,* the plaintiff financed defendants' purchase of a hospital. In return, the plaintiff was promised, among other things, that it would receive fifty percent of the shares of one of the defendant companies, HHG.

Addressing the defendants' Section 8319 defense, the court stated:

8. Section 8319 provides:

A contract for the sale of securities is not enforceable by way of action or defense unless:
(1) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a state quantity of described securities at a defined or stated price;
(2) delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within ten days after receipt of the initial transaction statement confirming the registration, or payment has

been made, but the contract is enforceable under this paragraph only to the extent of the delivery, registration or payment;
(3) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (1) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or
(4) the party against whom enforcement is sought admits in his pleadings, testimony or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price.
13 Pa.C.S.A. § 8319.

The language of the complaint states that to further induce the Plaintiff to enter the agreements, ... defendant[s] ... entered into an agreement with Plaintiff that upon completion of $2.75 million of financing, [defendants] would convey to Plaintiff a 50% interest in HHG. The Court does not view this as Plaintiff purporting to establish a contract for the sale of securities, but is rather contending that the 50% interest was an inducement for its agreement to provide funding. Accordingly, the alleged contracts are not subject to nor violative of the Pennsylvania Statute of Frauds.

*Id.* at *4. *See also IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 125 (3d Cir.1986) (where case does not constitute "an action to enforce a contract for the sale of ... securities," it falls outside of Section 8319).

■ Like the contract in *Great Western,* the alleged primary purpose of the Oral Agreement is not the sale of securities. Instead, the parties' intention in entering into the Oral Agreement was to restructure Pinnacle's obligation so as to make repayment more feasible, and to provide GE Capital with additional security. *See Baldassarre v. Singer,* 93 Montg. 392 (1970) (parties intent at the time of contracting governs the question of whether Section 8319 applies), *aff'd,* 444 Pa. 100, 282 A.2d 262 (1971). The court is mindful that one of the two documents offered by the Miller Defendants to support the Oral Agreement is entitled "Preferred Stock Purchase Agreement." However, irrespective of the draft document's title, the court does not consider an agreement to restructure a debt whereby securities are exchanged to constitute a contract for the "sale" of securities. *See St. John Mortgage Company v. United States Fidelity & Guaranty Company,* 897 F.2d 1266 (3d Cir.) (despite a draft "Bond Purchase Agreement," a material issue of fact was raised with regard to whether Section 8319 applied to the alleged oral contract), *cert. denied,* 498 U.S. 848, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990). Accordingly, Section 8319 does not require this court to deem the Oral Agreement unenforceable.

■ The court further notes that an oral modification to a loan agreement is enforceable under Pennsylvania law.[9] For instance, when confronted with an oral modification of a loan, the court in *Cedrone v. Unity Savings Association,* 609 F.Supp. 250 (E.D.Pa.1985), stated:

> While the Statute [of Frauds] does require any subsequent modification of a contract covered thereunder (e.g. a contract to convey an interest in land) to be in writing, it does not govern the subsequent modification of an agreement not within the Statute's original coverage.

*Id.* at 255. Because the original loan agreement did not need to be in writing, the alleged oral modification of that loan was not subject to Pennsylvania's Statute of Frauds. *Id. See also First National Bank v. Lincoln National Life Insurance Company,* 824 F.2d 277, 280 (3d Cir.1987) (oral modification, if proven by clear and convincing evidence, "is valid despite a provision in the original written agreement prohibiting non-written modifications").

The court concludes that the Oral Agreement, if proven by clear and convincing evidence, is enforceable under Pennsylvania law. Accordingly, because the Oral Agreement allegedly cancels the default upon which the Miller Defendants' liability is contingent, the court will deny GE Capital's motion for summary judgment.

---

9. The court's holding does not leave creditors unable to protect themselves from claims of oral modification. For instance, the court already has noted that GE Capital would have been entitled to judgment in its favor had the Credit Agreement provided that it was to be governed by the laws of New York, instead of New Jersey. Similarly, the court notes that GE Capital would be entitled to judgment if the Restructuring Agreement stipulated that it was to be governed by the laws of New Jersey, as opposed to Pennsylvania. *See* 25 N.J.S.A. § 1–5(f), (g) (requiring that the following agreements be in writing: (1) business loan agreements for amounts greater than $100,000; (2) agreements whereby creditors forbear from exercising their rights under such business loan agreements).